WITOLD K. VON HENNEBERG *vs.* PETER M. GENERAZIO.[1]

Middlesex. October 4, 1988. — December 12, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH & O'CONNOR, JJ.

*Practice, Civil*, Judgment notwithstanding verdict, Directed verdict. *Water. Drain. Real Property*, Water, Drain, Flowage of water. *Evidence*, Value, Opinion, Competency. *Nuisance. Trust*, Real estate trust. *Damages*, Interest.

In an action by a landowner to recover damages for harm resulting from a neighbor's interference with the flow of water from the plaintiff's property, the judge properly denied the defendant's motions for a directed verdict and for judgment notwithstanding the verdict, where the evidence created a question of fact for the jury as to whether the defendant acted unreasonably in preventing water from flowing off the plaintiff's property. [520-523] O'CONNOR, J., dissenting.

In an action by a landowner to recover damages for harm resulting from a neighbor's interference with the flow of water from the plaintiff's property, the judge, acting as the finder of fact on the preliminary issue of the plaintiff's competence to testify, was warranted in concluding that the plaintiff had sufficient familiarity and knowledge concerning his land to qualify him to testify as to its value. [524-525]

In an action by a landowner against a neighbor, the trustee of a realty trust, to recover for harm resulting from the defendant's interference with the flow of water from the plaintiff's property, the defendant was properly held personally liable as a trustee under G. L. c. 203, § 14A, for the damage resulting from his unreasonable interference with his neighbor's surface water, where he personally conducted the construction activities which led to the flooding of the plaintiff's land and constituted a private nuisance. [525]

This court, in the circumstances of an action sounding in tort, rejected the argument by the defendant that the plaintiff's damages should not have included prejudgment interest under G. L. c. 231, § 6B. [525-526]

CIVIL ACTION commenced in the Superior Court Department on April 13, 1981.

---

[1] Individually and as trustee of PMG Realty Trust.

The case was tried before *James L. Vallely*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Philip B. Benjamin* for the defendant.

*Thomas I. Elkind* for the plaintiff.

LIACOS, J.  The plaintiff brought this action to recover damages for harm resulting from his defendant neighbor's interference with the flow of water from his property.[2] The defendant appeals from a denial of his motions for a directed verdict and of his motion for a judgment notwithstanding the verdict.[3] He also claims that a judge in the Superior Court erred in allowing the plaintiff to give opinion testimony as to damage; that error was committed in adding prejudgment interest to the verdict; and that it was error to hold him individually liable for his acts as trustee of the PMG Realty Trust. We affirm.

1. *Motions for a directed verdict and for judgment notwithstanding the verdict*. The same standard applies to both a motion for judgment notwithstanding the verdict and a motion for a directed verdict. *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 571 (1986). *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1, 3-4 (1980). "If, upon any reasonable view of the evidence, there is found a combination of facts from which a rational inference may be drawn in favor of the plaintiffs, there was an issue for decision by the jury and the motions were properly denied." *Chase* v. *Roy*, 363 Mass. 402, 404 (1973). *Curtiss-Wright Corp.* v. *Edel-*

---

[2] The plaintiff sued Generazio individually and as trustee of PMG Realty Trust. The plaintiff's complaint also contained a count for negligence and a count alleging violation of G. L. c. 93A (1986 ed.). The negligence count was disposed of at trial by the allowance of the defendant's motion for a directed verdict; the c. 93A count resulted in a summary judgment for the defendant. We consider only the count which went to the jury and which resulted in a verdict and a judgment for the plaintiff.

[3] The jury returned a verdict in the amount of $33,500, to which the clerk of the court added interest in the amount of $22,143.50. The judge allowed Generazio's motion for a new trial, unless von Henneberg accepted a remittitur. von Henneberg accepted the remittitur which reduced the final award to $16,750, plus $11,071.95 in interest. Final judgment was entered on May 11, 1987, in favor of von Henneberg and against Generazio individually and as trustee of the PMG Realty Trust.

*Brown Tool & Die Co.*, *supra* at 4. "It is axiomatic that, in reviewing the denial of the defendant's motions for directed verdict and judgment notwithstanding the verdict, we will construe the evidence most favorably to the plaintiff and disregard that favorable to the defendant." *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 326 (1982).

We summarize the evidence in a light most favorable to the plaintiff.

Witold K. von Henneberg (Henneberg) purchased a one-acre lot on Edmands Road in Framingham from Philip Weir in 1957. Weir owned the adjacent undeveloped back lot, access to which was gained by a forty-foot strip of land which ran along the side of the plaintiff's property. Henneberg's land sloped downward toward the back lot so that water from Henneberg's property drained onto the access strip and flowed to Weir's back lot. In 1972, Weir built an earthen driveway on the access strip, which blocked the flow of the water and caused it to remain on Henneberg's land. After Henneberg complained about this flooding problem, Weir dug a drainage trench along the border of the two lots so that the water flowed from Henneberg's property onto the driveway and into the drainage trench.

In 1979, Weir sold the back lot to the defendant Generazio. Three days later Generazio conveyed the property to the PMG Realty Trust for $100. Generazio was the trustee and sole shareholder of the PMG Realty Trust. In 1980, Generazio began constructing a single-family dwelling on the back lot. He raised and paved the driveway, filled in the drainage trench, and built a berm which prevented water from flowing off Henneberg's land. Whenever there is a heavy rainfall, water floods one-third of Henneberg's property, endangering Henneberg's septic system. Photographs showing the flooded areas of the plaintiff's property were before the jury. There was evidence that, although Generazio was aware of these conditions, he made no effort to rectify them, as had Weir.

The evidence created a question of fact for the jury as to whether Generazio acted unreasonably in the circumstances. In *Tucker* v. *Badoian*, 376 Mass. 907 (1978), a majority of

the Justices announced prospectively, in a concurring opinion written by Justice Kaplan, that the "reasonable use" standard would govern water diversion cases. "[E]ach possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Tucker* v. *Badoian, supra* at 917 n.2. (Kaplan, J., concurring), quoting *Armstrong* v. *Francis Corp.*, 20 N.J. 320, 327 (1956). *Jacobs* v. *Pine Manor College,* 399 Mass. 411, 416 n.9 (1987).

The issue of reasonableness is "a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter." *Tucker* v. *Badoian, supra* at 918 n.2. (Kaplan, J., concurring), quoting *Armstrong* v. *Francis Corp., supra* at 330. *Butler* v. *Bruno,* 115 R.I. 264, 272 (1975).

The defendant contends that as matter of law his actions do not fall under conduct governed by the reasonable use standard.[4] He argues that the reasonable use standard applies only to damage caused by water flowing from one landowner's property onto another landowner's property. Because he prevented water from flowing off Henneberg's property and did not discharge water onto Henneberg's property, Generazio reasons, he cannot be liable for the harm caused under the reasonable use doctrine.

---

[4] Because the defendant failed to object to the judge's charge to the jury, the standard enunciated by the judge became the law of the case. See *Brady* v. *Nestor,* 398 Mass. 184, 191 (1986) (Hennessey, C.J., dissenting). The validity of the judge's charge thus is not an issue before us. We recognize that this does not preclude the defendant from arguing that his motions for a directed verdict (made at the conclusion of the plaintiff's case and at the conclusion of the trial) should have been allowed. *Tucker* v. *Badoian, supra* 915-916. We note, however, that the judge in this case correctly charged the jury in accordance with the *Tucker* standard. We read Justice O'Connor's dissent to express no disagreement with the validity of the charge as given, but only to express disagreement with our view that the evidence was sufficient to warrant the jury's verdict.

The defendant misunderstands the reasonable use doctrine. Under the reasonable use doctrine, a landowner can be held liable for the discharge of water onto another's land or for the blockage of water from another's land. The landowner "incurs liability when his *harmful interference with the flow of surface waters* is unreasonable" (emphasis added). *Tucker* v. *Badoian, supra* at 918 n.2 (Kaplan, J., concurring), quoting *Armstrong* v. *Francis Corp., supra* at 327.

It is noteworthy that the concurring opinion in *Tucker* relied on two cases with facts very similar to those of the present case. In *Pendergrast* v. *Aiken,* 293 N.C. 201 (1977), the defendants blocked a stream which ran downhill from the plaintiffs' property through the defendants' property, causing flooding on the plaintiffs' property. In *Butler* v. *Bruno, supra* the defendant, whose land was adjacent to and below that of the plaintiffs, built a retaining wall along the property line, which blocked the drainage and flooded the plaintiffs' land. In both cases, the court adopted the reasonable use doctrine, holding that the evidence presented a question to be determined by the trier of fact. Other jurisdictions have applied the reasonable use doctrine to similar fact patterns. See, e.g., *Rodrigues* v. *State,* 52 Hawaii 156 (1970); *Mulder* v. *Tague,* 85 S.D. 544 (1971).

The defendant contends that construction of a single-family dwelling constitutes reasonable use per se, and thus cannot result in liability. Under the *Tucker* standard, the fact finder must view the landowner's activity on his land with an eye toward the effect of that activity on the flow of surface waters. If the fact finder, after taking into account all of the relevant factors, finds that the possessor acted unreasonably, the nature of the original activity alone, whether it be constructing a shopping mall or building a single-family dwelling, will not bar liability.

Here, there was ample evidence to support a finding that the defendant acted unreasonably. Accordingly, the judge properly denied the defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

2. *Damages.* The defendant argues that the trial judge improperly admitted Henneberg's testimony as to damages. "An owner of property familiar with it and its uses and characteristics may testify as to its value. *Rubin* v. *Arlington,* 327 Mass. 382, 384 (1951). Evaluation of the witness' familiarity, knowledge, and experience is for the trial judge and his decision is 'conclusive unless upon the evidence it [is] erroneous as matter of law.' *Id.*" *Larabee* v. *Potvin Lumber Co.,* 390 Mass. 636, 643 (1983). *Blais-Porter, Inc.* v. *Simboli,* 402 Mass. 269, 272-273 (1988). See P.J. Liacos, Massachusetts Evidence 118-119 (5th ed. 1981 & Supp. 1985).

The judge was well within his discretion to conclude that the plaintiff was sufficiently familiar with his land to testify as to its value. The judge did not presume familiarity from the fact of ownership alone. See *Blais-Porter, Inc.* v. *Simboli, supra* at 272. Henneberg, a professional architect, was not a mere holder of title or absentee landowner. He had cleared the land after purchasing it in 1957, had transformed a half-destroyed farmhouse into a family home, and had lived there for twenty-eight years. Henneberg demonstrated a detailed knowledge of his land in his trial testimony.

After the judge found that Henneberg was qualified to testify on the question of damages, the plaintiff was free to give his opinion of the value of the damaged property. Once a foundation for opinion testimony is properly laid, it is left to the fact finder to assess the weight and credibility of the testimony in reaching a final determination of damages. *Patch* v. *Boston,* 146 Mass. 52, 57 (1888). The defendant's attempt, on cross-examination, to discredit Henneberg's method of reaching his dollar figure did not affect Henneberg's established competence to give his opinion. The fact that the plaintiff placed a value on the affected one-third of his land, rather than giving an opinion as to the lesser value of the whole land, is not fatal. The jury had other evidence of damages before them.[5] The

---

[5] There was other evidence as to damage, e.g., photographs showing the flooding of a portion of the plaintiff's land; testimony as to the danger caused by the flooding to the plaintiff's septic tank and leaching field;

value of a house lot such as the plaintiff's ($150,000) was before the jury. The jury could well have interpreted the plaintiff's testimony as evidence of a diminution of value of the entire lot as a result of the defendant's acts. See *Larabee* v. *Potvin Lumber Co.*, *supra*. See also *Willey* v. *Cafrella*, 336 Mass. 623, 624 (1958).[6]

3. *Individual liability*. Under G. L. c. 203, § 14A (1986 ed.), "[a] trustee shall be personally liable . . . for torts committed in the course of administration of the trust estate only if he was personally at fault." Generazio's unreasonable interference with surface waters constituted a private nuisance. *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. 858, 863 (1982). Restatement (Second) of Torts § 833 (1979). A private nuisance is a "tort" under G. L. c. 203, § 14A. See *Triangle Center, Inc.* v. *Department of Pub. Works, supra; Tucker* v. *Badoian,* 376 Mass. 907, 917 (1978) (Kaplan, J., concurring); *Pendergrast* v. *Aiken, supra* at 216; *Butler* v. *Bruno,* 115 R.I. 264, 272 (1975). See also W. Prosser & R. Keeton, Torts §§ 87-88 (5th ed. 1984). There is no question that Generazio personally conducted the construction activities which led to the flooding of the plaintiff's property. It follows that Generazio may be held personally liable as a trustee for the damage resulting from his unreasonable interference with his neighbor's surface water.

4. *Prejudgment interest*. We reject Generazio's argument that Henneberg's damages should not have included prejudgment interest under G. L. c. 231, § 6B (1986 ed.). As we have indicated, the essence of this action is that it sounds in tort. General Laws c. 231, § 6B, clearly applies by its language: "In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages . . . for damage to property, there shall be added by the clerk of court

---

evidence as to the creation of a swampy area on part of the plaintiff's land; and evidence of the unsightliness of the affected area.

[6] The defendant offered no evidence of value. The plaintiff testified that the value of the affected area was $50,000. The jury verdict was in the amount of $33,500. We note also that the issue of mitigation was put to the jury by the judge's charge.

to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law." Additionally, the remittitur cured any potential error. While the original judgment was for $33,500 plus $22,143.50 in prejudgment interest, now the judgment is just under $28,000.

*Judgment affirmed.*

O'CONNOR, J. (dissenting). In *Tucker* v. *Badoian*, 376 Mass. 907, 916-918 (1978), six Justices of this court announced that, in the future, water diversion cases would be governed by a "reasonable use" standard, the "details" of which "[would] evolve and be determined in the usual way through the decisional process." This is the first case in which the court has been called upon to give shape to the new rule and to demonstrate its application. This case, then, is not only important to the parties. It also provides the court an opportunity to move forward in an area of the law that has heretofore been troublesome and unsettled.

I write this separate opinion because I read the court's opinion as unwisely permitting a jury to impose liability on a defendant on the basis of evidence that, as a matter of law, demonstrates no more than that the defendant diminished the value of the plaintiff's land by obstructing the flow of water from it. Such evidence, without more, should not be legally sufficient to warrant a finding of unreasonable use.

I believe that the court should articulate standards by which reasonableness and unreasonableness must be measured, and I also believe that the reasonable use or unreasonable use issue should not be submitted to a jury unless, unlike here, the evidence is sufficient as a matter of law to warrant a finding of unreasonableness in the light of those standards.

I suggest that the standards identified by the Supreme Court of North Carolina in *Pendergrast* v. *Aiken*, 293 N.C. 201, 217

(1977), would be appropriate. In that case, the court reasoned that a determination of reasonableness requires "weighing the gravity of the harm to the plaintiff against the utility of the conduct of the defendant. *Armstrong* v. *Francis Corp.*, [20 N.J. 320, 330 (1956)]; *State* v. *Deetz*, [66 Wis. 2d 1 (1974)]; Restatement (Second) of Torts § 826 (Tent. Draft No. 18, 1972). Determination of the gravity of the harm involves consideration of the extent and character of the harm to the plaintiff, the social value which the law attaches to the type of use which is invaded, the suitability of the locality for that use, the burden on plaintiff to minimize the harm, and other relevant considerations arising upon the evidence. Determination of the utility of the conduct of the defendant involves consideration of the purpose of the defendant's conduct, the social value which the law attaches to that purpose, the suitability of the locality for the use defendant makes of the property, and other relevant considerations arising upon the evidence." It is my view that the jury in the present case, guided by a consideration of those factors, could not have concluded rationally that the defendant's blockage of water flow was unreasonable.

The evidence in its light most favorable to the plaintiff, supplemented by other relevant evidence, was as follows. In 1957, Henneberg purchased a farmhouse and one-acre lot at 618 Edmands Road in Framingham from Philip Weir. Weir retained ownership of an undeveloped back lot and also owned a forty-foot wide access strip connecting the back lot to Edmands Road. This right of way ran along the east side of Henneberg's property (the left side facing the property from Edmands Road). At first, there was good drainage from Henneberg's property across the right of way. The right of way was flat. In 1972, Weir piled earth on the right of way to construct a driveway to the back lot. As a result, there was a six-foot-high earthen bank "partially through" the right of way. When water started to collect "at the bottom of this bank," Henneberg wrote a letter to Weir complaining that the bank blocked the natural flow of water from his land. In response, Weir dug a drainage trench on Wier's land parallel to Henneberg's rear boundary line and perpendicular to and across

the base of the driveway. The ditch was one foot or less deep at its easterly (left) end and became deeper as it ran westerly. The trench collected water from Henneberg's property and the earthen bank and left Henneberg's ground free of water and his lawn undamaged. After this, Henneberg had no problem with water collecting on his property until 1980.

On November 13, 1979, the defendant Generazio, a builder, purchased the back lot and right-of-way strip from Weir. In April, 1980, Henneberg noticed that water had collected at the "bottom" of his property. Generazio had dumped gravel at the "low part" of the driveway near Henneberg's land to enable vehicles to be driven "through the soft ground." This created a "barrier," so the water backed up onto Henneberg's land.

Water came from Edmands Road along the unpaved driveway and carried silt and sand onto Henneberg's property. (Nothing in the record shows that this was caused by anything Generazio had done.) Henneberg complained to Generazio about the water problem, and Generazio told him that he would eliminate the problem by running a drain on his own property.

Subsequently, Generazio built a single-family dwelling on the back lot. He filled the drainage trench that had been dug by Weir but, according to Generazio's uncontradicted testimony, he replaced Weir's trench with another trench of the same length approximately two feet away, and filled it with a perforated pipe and a filter made of one-inch stones.[1]

Generazio also paved the driveway with asphalt. Water still flowed from the driveway onto Henneberg's land and Henneberg complained to the town's building inspector. Generazio built a curb along the driveway and a catch basin at the bottom of the driveway. The catch basin did not solve the problem of water collecting at the low spot on Henneberg's property because, according to Henneberg's testimony, the catch basin "was constructed on the wrong side of the driveway"; water could not go from Henneberg's land over the "little bank" of

---

[1] The court's opinion notes merely that Generazio "filled in the drainage trench." *Ante* at 521. Henneberg testified that Generazio has "run a pipe along the trench." Clearly, there was no evidence that Generazio filled in the drainage trench without providing a substitute for it.

the driveway built by Generazio, which constituted a "barrier," and thus could not drain into the catch basin.[2] After Generazio installed the drain and the curb, he did nothing further to get rid of water on Henneberg's property.

Generazio also constructed a berm across the top of his driveway where it meets Edmands Road, in order to prevent water from spilling off Edmands Road onto the driveway. As a result, water ponded on the road and leaked into Henneberg's property through a breach in the curb in front of Henneberg's property. Henneberg has never complained to the town about that breach.

Henneberg testified that he has not installed any trench or drain on his own property, has taken no action to drain water off his property, and has not contacted any contractor to see if such action on his part would be possible.

Generazio's conduct was incidental to the construction of a single-family home in a residential area. The jury would not have been warranted in finding otherwise. Thus, nothing about "the purpose of the defendant's conduct, the social value which the law attaches to that purpose, [or] the suitability of the locality for the use the defendant makes of the property," all relevant factors identified in *Pendergrast* v. *Aiken, supra,* weighs against Generazio or in favor of Henneberg. Furthermore, the evidence leaves entirely to speculation whether Generazio could have avoided the conduct of which Henneberg complains while still making his property usable for residential purposes.

Moreover, the jury would not have been warranted in concluding that the *Pendergrast* v. *Aiken* factors bearing on the "gravity of the harm to the plaintiff" weigh in Henneberg's favor. A key factor is "the burden on plaintiff to minimize the harm." Nothing in the evidence shows that the back-up of water could not easily have been avoided by Henneberg. The evidence does not warrant a finding that most or all of the collected water does not come from Edmands Road through

---

[2] The evidence did not disclose whether Generazio owned land on Henneberg's side of the driveway on which an effective catch basin could have been placed.

the breach in the berm at the front of Henneberg's property, a condition about which Henneberg did nothing. For all that appears in the evidence, the water collection problem could have been corrected by Henneberg's employment of simple and inexpensive methods of dealing with the source of the water or its evacuation. The evidence was insufficient to warrant the jury in concluding that the plaintiff had sustained his burden of showing that the gravity of the harm to Henneberg's property outweighed the utility of Generazio's conduct. Therefore, the evidence did not warrant a finding that the defendant's conduct was "unreasonable."

There are jurisdictions which, at least in the past, have embraced the so-called "civil law" or "natural flow" rule, subjecting a landowner to liability whenever he interferes with the natural flow of surface water to the detriment of another's property. The concurring Justices in *Tucker* v. *Badoian, supra* at 917, rightly characterized that rule, which has never been the law of this Commonwealth, as "unsatisfactory." If the court is to develop a cogent body of law dealing with surface water disputes, it should not purport to reject the natural flow doctrine and then hold, as it implicitly does today, that evidence, which as a matter of law proves nothing more than the defendant's interference with the natural flow of water to the detriment of his neighbor's land, is sufficient for liability. I respectfully dissent.