Charles W. ROY, Plaintiff,

v.

FIRST EASTERN BANK, Defendant, Third Party Plaintiff,

v.

Austin C. EATON, Jr., Edward S. Keating, Frank H. Weller, Jr., Robert Trent Jones, Edmund F. Curtis, Jr., Third Party Defendants.

Civ. A. No. 91–12088–Y.

United States District Court, D. Massachusetts.

Jan. 9, 1992.

---

Michelle Joyce Lipton and Paul R. Gupta, Nutter, McClennen & Fish, Boston, Mass., for Charles W. Roy.

William F. Quinn, Marc F. Frey, and Peter R. Merry, Tinti, Quinn & Savoy, Salem, Mass., for First Eastern Bank.

Richard M. Zielinski and Theos D. McKinney, Hill & Barlow, Boston, Mass., for Robert Trent Jones.

Douglas G. Moxham, Lane & Altman, Boston, Mass., for Edmund F. Curtis, Jr.

## CERTIFICATION, MEMORANDUM AND ORDER

YOUNG, District Judge.

Third party defendant Robert Trent Jones ("Jones") has moved to dismiss the Third Party Complaint that was filed against him by the First Eastern Bank ("the Bank"). Having considered materials beyond the Complaint, this motion is, after notice to the parties, treated as one for summary judgment.

Jones argues that he cannot be held personally liable on the Commercial Loan Agreement that was entered into by several of his co-trustees on behalf of the Ipswich Club Development Company ("the Trust"). At a hearing held on November 26, 1991, this Court bifurcated its analysis of Jones' motion.

First, this Court agreed to consider whether Jones ought have summary judgment on the *contract* claims against him. Second, the Court decided to certify a question to the Massachusetts Supreme Judicial Court pursuant to Rule 1:03 of that Court. The question concerns an interpretation of language contained in the second paragraph of Mass.Gen.L. ch. 203, § 14A, relative to potential *tort* claims against a trustee. This case will not, however, be stayed pending an answer from the Supreme Judicial court since, at most, the answer provided by that court will only resolve the pending motion as to Jones, and the parties which remain following that answer need an expeditious resolution of the underlying dispute. Accordingly, the case is ordered on the running trial list for June, 1992.

### I. *Relevant Facts.*

Upon the record presently before this Court, the following facts appear undisputed. On February 18, 1986, Jones, Austin C. Eaton, Jr., Edward S. Keating, and Paul A. Colwell, Jr. executed the Ipswich Club Development Co. Agreement and Declaration of Trust (the "Declaration of Trust"). The Declaration of Trust declares the purpose of the Trust to be to plan, develop, construct, own, and operate a country club complex, including a golf course, in Ipswich, Massachusetts. On February 27,

1986, the Declaration of Trust was recorded.

On November 6, 1988, the Trust and the Bank entered into a Commercial Loan Agreement. The Agreement identifies the Trust as a Massachusetts business trust and was signed by Austin Eaton, Jr. as Trustee. On November 8, the clerk of the Trust executed a written certification of an Action of the Trustees. The certification identified the Trust by the date of execution and place of recording of the Declaration of Trust.

On April 6, 1989, Mr. and Mrs. Charles W. Roy (the "Roys") entered into two Home Site Purchase Agreements with the Trustees. The first paragraph of the Purchase Agreements identified the Trust by the date of execution and the place of recording of the Declaration of Trust. The signature clause identified the seller as the Ipswich Club Development Company. The Purchase Agreements were signed for Ipswich Club Development Company by Austin C. Eaton, Jr. "As Trustee and for Co–Trustees but not individually."

On April 25, 1989, the Roys executed two promissory notes and granted the Trust a mortgage on each lot. On the same day, the Trust assigned and endorsed over the mortgage notes to the Bank, pursuant to the Commercial Loan Agreement. The Assignment was signed for the Trust by Austin C. Eaton, Jr.

On or before July 6, 1990, the Roys allege that they learned that certain language of Addendum B to the Home Site Purchase Agreements, providing that the buyer would have the right to sell the property back to the seller, had been altered. The Roys allege that Edmund F. Curtis, Project Manager of the Ipswich Country Club, altered or directed someone to alter the Purchase Agreements to provide that the buyer would have the right to sell back the property "at seller's sole discretion."

On August 30, 1990, the Roys made written demand upon the Trustees and the Trust for refund of the amounts paid by them. The demand was refused. On or about September 17, the Roys notified the Bank that because of the alleged fraud they were discontinuing payments under the mortgage agreements.

The Bank sought to foreclose on the properties on August 9, 1991. On August 8, Charles W. Roy initiated this action with the filing of a Verified Complaint for Injunctive Relief. Roy asked the Court to prevent the Bank from foreclosing on the properties. On August 15, the Court denied Roy's Motion for a Preliminary Injunction.

On August 20, Roy filed an Amended Complaint asking that the foreclosures be stayed, that Roy be relieved of any claim by the Bank for outstanding payments, and that the court award Roy damages against it. On September 17, the Bank filed a Third Party Complaint which alleges that Jones should be held personally liable to the bank in tort, in contract, and under the Uniform Commercial Code should Roy prevail against the Bank. On October 18, Jones moved to dismiss the Third Party Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

On October 23, 1991, Roy moved for leave to amend his complaint to add Jones, the three other trustees and Curtis, individually, as defendants. On November 13, the motion was allowed. The Second Amended Complaint alleges that Jones will be personally liable to Roy in tort and in contract. On December 9, Jones filed a motion to dismiss the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

Neither the Roys nor the Bank allege that Jones was personally at fault in connection with the transactions or torts at issue in this action.

## II. *The Contract Claims.*

Jones argues that each claim that is premised on the existence of a contract between the parties should be dismissed pursuant to the decision of the First Circuit Court of Appeals in *James Stewart & Co. v. National Shawmut Bank of Boston,* 75 F.2d 148 (1st Cir.), *cert. denied,* 294 U.S. 722, 55 S.Ct. 549, 79 L.Ed. 1254 (1935). In response, the Bank suggests that *James*

*Stewart* is not the controlling law in Massachusetts and that this Court should, instead, rely upon Chief Justice Holmes' opinion in *American Mining & Smelting Co. v. Converse,* 175 Mass. 449, 56 N.E. 594 (1900).

*American Smelting* is not on point, the Massachusetts Supreme Judicial Court there holding nothing more than that trustees who acted under a trust deed providing exoneration from personal liability nevertheless had "authority to contract personally with the plaintiff if they saw fit." *Id.* at 451, 56 N.E. 594. There is no such evidence here. Far more pertinent is *James Stewart,* a pre-*Erie*[1] diversity case arising out of Massachusetts, where the First Circuit held under general principles of trust law that a trustee is protected from personal liability upon a contract if the party who contracts with the trust knows where to find the Trust Declaration that contains the exculpatory language absolving the trustee from such liability. Providing such knowledge gives the party the option of reading the Declaration's provisions, and hence knowledge of the whereabouts of the document puts the party on notice of the terms of the Declaration. In sum, if the party knows where to find the Declaration, and the Declaration contains a provision protecting the trustee from personal liability upon the contract, then the trustee is shielded from such personal liability. The First Circuit summarized this doctrine in *James Stewart:*

> we think that the explicit reference to the declaration of trust, and to the public record of it where it could be found, put the plaintiff on its notice to ascertain whether its provisions affected its contract with the defendant, and that the

plaintiff was bound by it, at least, to the extent to which it imposed limitations on the powers or liabilities of the persons who signed on behalf of the trust.

*James Stewart,* 75 F.2d at 149. In 1979, post-*Erie,* the First Circuit reaffirmed this rule in *Cantor v. Wilbraham & Monson Academy,* 609 F.2d 32, 34 (1st Cir.1979) where, expressly bound to follow Massachusetts precedent, it remarked *in dicta* that "the principles of trust law as stated by this court indicate that the trustee's liability will be limited by a clause in the trust agreement only where the ... party contracting with the trustee had effective notice of the limitation."

Neither *James Stewart* nor *Cantor* has ever been cited favorably—or at all, for that matter—by Massachusetts' appellate courts. The sole mention of *James Stewart* is half hearted at best: "[w]e have no idea whether [the statement of Massachusetts law which appears in *James Stewart & Co. v. National Shawmut Bank,* 75 F.2d 148, 149 (1st Cir.), *cert. denied,* 294 U.S. 722, 55 S.Ct. 549, 79 L.Ed. 1254 (1935)] (if correct in the abstract) has any application to the facts of the instant case." *Tammaro v. Colarusso,* 11 Mass.App.Ct. 44, 47 n. 6, 413 N.E.2d 1118 (1980) (Grant, J.).

This case thus presents the issue "whether federal circuit court determinations of state law are binding on federal district courts.... Normally, district courts are bound to follow rules of law enunciated by their circuits. In diversity cases, by contrast, state law is to be determined by reference to state law sources." The Supreme Court—Leading Cases, 105 Harv. L.Rev. 177, 317 (1991).[2]

---

1. *Erie R.R. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

2. The editors of the *Harvard Law Review* go on, rather uncharitably it seems to me, to say:

> District court judges are so accustomed to following circuit precedent in federal question cases, however, that they may well follow the rule of state law enunciated in their circuit, rather than look to state law sources.... To preclude this sort of problem, the Court in [*Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)] specifically should have reminded district court

judges that they must always look first at the most recent state pronouncements to decide a diversity case, rather than relying on circuit court "precedent."

The Supreme Court—Leading Cases, 105 Harv. L.Rev. 177, 317–18 (1991). While the editors apparently feel confident in suggesting to the Supreme Court what it ought to do, its broadside at district court judges is a bit unfair. May I respectfully suggest that the "problem" referred to in the text is a staple of district court jurisprudential fare—one which is routinely recognized and ordinarily addressed through a con-

■ In this case, however, there is no real tension since First Circuit precedent is not contrary to the Massachusetts decisional law (which is silent on the point) and this Court predicts that the Massachusetts Supreme Judicial Court will adopt the rule enunciated in *James Stewart*. *See* IIIA Scott on Trusts § 263.2 (4th ed. 1988).

■ In the instant case, the Bank received adequate notice that the Ipswich Declaration of Trust protects trustee Jones from personal liability stemming from the contracts entered into by the parties. The critical language is found in a Certificate signed by the Clerk of the Trust on November 8, 1988, which was presented to the Bank as an attachment to a document entitled "Action of Trustees in Lieu of a Meeting." In the Certificate, clerk Westcott informs the Bank that the Declaration of Trust was recorded by the Essex South Registry of Deeds and is located in Book 8138 on page 34. This description satisfies the notice requirement of *James Stewart.*

Jones, therefore, shall have partial summary judgment upon any count based on *contract* grounds. Accordingly, Count I of the Third Party Complaint, the indemnification claim, is dismissed to the extent that it is premised on contract doctrine. Any portion of Count I that is based on *tort* principles is not precluded at this time, pending an opinion from the Massachusetts Supreme Judicial Court. Count II is not dismissed. Count III, based on contractual warranties under the Uniform Commercial Code, is hereby dismissed.

## III. *Certification.*

The *tort* claims, however, present a question of law of the Commonwealth of Massachusetts as to which it appears to this Court there is no controlling precedent in the decisions of the Supreme Judicial Court. This Court further certifies that the proper answer to the question is in doubt and may be determinative of this and thirty-three potentially related cases, at least as to one of the parties.

The statute in question, Mass.Gen.L. ch. 203, § 14A (1990), reads (in pertinent part) as follows:

Unless otherwise provided in the contract, a trustee shall not be personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he failed to reveal his representative capacity and identify the trust estate in the contract.

A trustee shall be personally liable for obligations arising from ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he was personally at fault.

In *Apahouser Lock and Security Corp. v. Carvelli*, 26 Mass.App.Ct. 385, 388, 528 N.E.2d 133 *rev. den.*, 403 Mass. 1104, 530 N.E.2d 797 (1988), the Massachusetts Appeals Court stated that the provisions of Mass.Gen.L. ch. 203, § 14A apply only to trustees of trusts of the donative type associated with probate practice, not the Massachusetts business trust—the business form adopted here. Of course, if the provisions of section 14A were to apply to *tort* claims against trustees of other trusts, then Jones could not be held personally liable to the plaintiff or third party plaintiff upon their *tort* claims in the pending case, since there is no evidence here that he was personally at fault. Less than six weeks after declining to review the Appeals Court decision in *Apahouser*, however, the Supreme Judicial Court, without mentioning or commenting on the *Apahouser* decision by the Appeals Court, applied the provisions of ch. 203, § 14A *in dicta* to a trust *not* of the donative type. *von Henneberg v. Generazio*, 403 Mass. 519, 525, 531 N.E.2d 563 (1988). Thus, it appears to this Court that there is no clearly controlling precedent in the decisions of the Supreme Judicial Court.

scious attempt by the district judge to harmonize the two sources of authority. *Douglass v. Delta Air Lines, Inc.,* 709 F.Supp. 745, 764 (W.D.Tex.1989); *Reiver v. Murdoch & Walsh,*

P.A., 625 F.Supp. 998, 1012 (D.Del.1985); *Lesnefsky v. Fischer & Porter Co.,* 527 F.Supp. 951, 954 (E.D.Pa.1981).

Therefore, on the Court's own motion, the ruling of this Court on the following question[3] is reserved until the decision of the Supreme Judicial Court may be had on the matter, in the manner and form provided by Supreme Judicial Court Rule 1:03:

Do the provisions of Mass.Gen.Laws ch. 203, § 14A (1990) apply to a trustee acting under a trust not of the donative type associated with probate practice?

This question is certified to the Supreme Judicial Court for its decision. The clerk is directed to transmit this Order to the Supreme Judicial Court.

SO ORDERED.

See also 646 F.Supp. 378.

---

**3.** Maintaining that this Court is in error in applying the rule of *James Stewart* to the undisputed facts of this case, the Bank asks this Court to certify to the Supreme Judicial Court a question which will confirm that the limitation of liability expressed in the phrase "only if he was personally at fault" at the end of the second paragraph of Mass.Gen.Laws ch. 203, § 14A applies solely to "torts committed in the course of administration of the trust estate" instead of to the entire paragraph.

This Court declines so to certify. On this point, the law of the Commonwealth appears settled in *Apahouser,* 26 Mass.App.Ct. at 387 n. 3, 528 N.E.2d 133. Nothing in *von Henneberg*

undercuts the cogent reasoning expressed in footnote 3 of *Apahouser,* and this Court follows it here. Jones avoids contract liability solely because of the *James Stewart* rule, not because of an expansive reading of the limitation clause in Mass.Gen.L. ch. 203, § 14A.

Should any of this reasoning be in error, however, this Court, having already burdened the Massachusetts Supreme Judicial Court with the one question which appears genuinely unsettled, invites correction or clarification of these matters as well, in keeping with the spirit of the certification mechanism, in order that the state law issues may be determined with finality.