Malden *v.* Breslin.

CITY OF MALDEN *vs*. ROBERT E. BRESLIN & others.[1]

No. 92-P-899.

Middlesex. October 20, 1992. - March 24, 1993.

Present: ARMSTRONG, PERRETTA, & IRELAND, JJ.

Further appellate review granted, 415 Mass. 1103 (1993).

*Practice, Civil*, Amendment. *Evidence*, Expert opinion. *Damages*, Tort, Nuisance, Interest. *Negligence*, Rockfall.

At the trial of claims resulting from the collapse of a rock outcrop, the judge did not abuse his discretion in allowing the plaintiffs to amend the complaint to add claims based on theories of nuisance and strict liability. [260]

In a civil case, the defendant's motion to strike the opinion testimony of plaintiffs' expert witness, which had been presented to the jury without objection, was properly denied as untimely, where the motion was presented on the day following the completion of cross-examination of the expert. [260-261]

At the trial of civil claims, the defendant's motion for judgment notwithstanding the verdict was correctly denied. [261]

At the trial of claims sounding in tort, the judge correctly denied the defendant's objection to the form of the judgment, where the objection raised an equitable theory that the defendant had essentially waived by assenting to the manner in which the issue of damages was submitted to the jury. [261-263]

Plaintiffs who prevailed on claims sounding in tort were entitled to prejudgment interest under G. L. c. 231, § 6B, on a certain component of the damages awarded. [263-264]

In the circumstances of tort claims, resulting from the collapse of a rock outcrop, the defendant was not entitled to an equitable credit against the share of cleanup costs it was required to pay as damages to the plaintiffs. [264-265] ARMSTRONG, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on September 18, 1990.

The case was tried before *Gordon L. Doerfer*, J.

[1] Shirley Constantine and Rockbusters, Inc. Rockbusters is also the defendant to a cross claim brought by Breslin and Constantine.

*Michael A. Fitzhugh & Jeffrey W. Moss* for Rockbusters, Inc.

*David M. Crowley* (*Ralph C. Sullivan & Thomas M. Elcock* with him) for Robert E. Breslin.

*Paul A. Bartlett*, for Shirley Constantine, was present but did not argue.

*Jordan L. Shapiro*, City Solicitor, & *Joseph P. Limone*, for city of Malden, amicus curiae, submitted a brief.

PERRETTA, J. Rockbusters, Inc. (Rockbusters), undertook the breaking up and removal of a rock outcrop on land located in Malden. A pneumatic hammer with an attached chisel and hydraulic excavator, with a combined weight of about 108,000 pounds, were used. The hammer and attached chisel would strike the rock continuously at a rate of 300 to 350 beats per minute with 10,000 foot pounds of impact to the rock with each beat. Robert E. Breslin and Shirley Constantine lived next door to each other and across the street from Rockbusters' worksite. There was a granite outcrop behind their properties which was connected to and a part of the same granite formation of the rock outcrop being removed by Rockbusters. Several days into the removal project, on October 8, 1988, Rockbusters began working with the hammer at 9:00 A.M. About forty-five minutes later, the outcrop behind Breslin's and Constantine's properties collapsed. Breslin's house and vehicle, a van, were crushed and Constantine's yard was filled with rocks, boulders, and other debris. The city brought an action for injunctive relief, a cleanup order, against Breslin, Constantine, and Rockbusters. Breslin and Constantine, who did not dispute their responsibility to make their properties safe, brought cross claims in negligence against Rockbusters. The cross claim issues of Rockbusters' liability and damages were bifurcated for trial before the same jury. After finding that Rockbusters was negligent and had maintained a nuisance on the site by operating the equipment, the jury assessed damages in the amount of the value of the property before the rockfall and the cost of the cleanup made necessary by Rockbusters' ac-

tivity.[2] Claiming numerous errors in the judge's various rulings during the trial and on postjudgment motions, Rockbusters appealed. We affirm the judgment.

1. *Amendment of the cross claims.* On the fifth day of trial, the judge allowed Breslin and Constantine (the plaintiffs) to amend their complaints against Rockbusters by adding claims based upon theories of nuisance and strict liability. In allowing the motions to amend, the judge noted that, although these claims had not been specifically pleaded by the plaintiffs, they had been part of the litigation from the outset. Further, he inquired of Rockbusters as to whether it thought it needed any time to prepare or obtain witnesses to meet the additional theories of liability, and Rockbusters answered in the negative.

Moreover, Rockbusters has not shown that it was somehow prejudiced by the amendments. In their responses to special questions, the jury answered that although Rockbusters had been negligent, its activity of operating the hammer and excavator was not ultrahazardous. In these circumstances, we conclude that Rockbusters has not provided us with any reason to believe that the judge abused the broad discretion conferred upon him by Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). See *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 289-290 (1977), quoting from *Foman* v. *Davis,* 371 U.S. 178, 182 (1962). See also *Mathis* v. *Massachusetts Elec. Co.,* 409 Mass. 256, 264 (1991).

2. *The plaintiffs' expert witness.* Rockbusters argues that because the opinion of one of the plaintiffs' experts lacked a sufficient foundation in the evidence, the opinion "should have been withrawn from the jury." All the testimony about which Rockbusters now complains was presented to the jury without objection. The day following the completion of cross-examination of the expert, Rockbusters moved to strike this expert's testimony on the grounds that his theory of causation (the hammering caused resonant vibrations, like shockwaves, to travel throughout the rock outcrop) was

---

[2]The judge subsequently granted the equitable relief sought by the city.

"bologna," "beyond human perception," irrelevant to the question of negligence, and subject to refutation by its own expert witness. The motion was correctly denied for the reason, if no other, that it was untimely. See *Gishen* v. *Dura Corp.*, 362 Mass. 177, 181 (1972), and authorities therein cited. See also *Abraham* v. *Woburn*, 383 Mass. 724, 726 n.1 (1981).

3. *Judgment notwithstanding the verdict.* Rockbusters compares its activities to those described in *Piontek* v. *Joseph Perry, Inc.*, 342 Mass. 342 (1961), and *Ted's Master Serv., Inc.* v. *Farina Bros.*, 343 Mass. 307 (1961), and argues that because the plaintiffs failed to show that Rockbusters knew or should have known that its operations could cause a rockfall, it was entitled to judgment notwithstanding the verdict. This argument ignores the testimony of the plaintiffs' experts that, because of the age and formation of the rock outcrop, a reasonably prudent excavator would not have operated the hammer on the rock outcrop without first consulting a geologist and a seismologist and that the operators of the hammer could have detected the resonant vibrations caused by the hammer had they used a seismometer or other listening device. "It is axiomatic that, in reviewing the denial of the defendant's motions for directed verdict and judgment notwithstanding the verdict, we will construe the evidence most favorably to the plaintiff and disregard that favorable to the defendant." *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 326 (1982).

4. *Cost of remedial measures as damages.* There was substantial evidence to show that the rock outcrop behind the plaintiffs' property was unstable in some ways without regard to Rockbusters' activities. Special questions were framed which required the jury to determine, as between Rockbusters and each of the plaintiffs, the fair value of the cost of the cleanup required by the city and then to make a proper dollar allocation of that cost based upon what was caused by Rockbusters and what was unsafe without regard to Rockbusters' activities. The jury responded that Rockbusters was responsible for $207,000 of the $414,000 total cost of the

remedial work to be done on Breslin's property. The total cost for the Constantine work was found to be $161,000, with Rockbusters liable for $64,400 of that amount.

After the jury was discharged, the judge scheduled a hearing to address the question as to the form of the judgment that should be entered in light of the jury's answers to the special questions and the need to make the properties safe as soon as possible. At this hearing, Rockbusters asked the judge to ignore the jury's determination of the value of the total cost of the cleanup and to convert the award of damages from dollars into percentage shares of responsibility for the actual cost. This request was based upon the argument that because the actual cost of the cleanup could be less than that determined by the jury, the judge should retain jurisdiction over the matter and hold Rockbusters responsible for only fifty and forty percent respectively of the actual cleanup cost of Breslin's and Constantine's properties. The judge denied the request, which was also the subject of Rockbusters' unsuccessful motion to alter or amend the judgment which ensued.

The reasons for this denial were set out by the judge in a memorandum of decision. In refusing to overlook the jury's verdict, the judge stated: "There was a hard fought battle with conflicting expert testimony given to the jury on the issue of the extent of work and the reasonable cost of performing it. Not unexpectedly, evidence was offered by Rockbusters on the low end and evidence was offered by Breslin and Constantine on the high end of these questions. The jury, with due regard to the credibility of the witnesses and the fair and reasonable inferences to be drawn from the testimony came to their own conclusions as to the fair and reasonable value of the work to be done." In claiming that the judge was in error in refusing to amend the judgment and retain jurisdiction over the matter, Rockbusters structures the following argument. Because this component (cleanup costs) of the damages arose out of a proceeding brought by the city to enjoin a public nuisance, the action was equitable in nature. In such an action, damages are determined by the

judge and must be consistent with the relief granted. As the extent of the remedial action to be undertaken to the satisfaction of the city had yet to be determined, the issue of the remedial costs was not ripe for consideration by either the judge or the jury. This argument, however, is inconsistent with the position steadfastly taken by Rockbusters until after the jury was discharged. Rockbusters demanded a jury trial on all issues in all its pleadings.[3] After the jury returned its verdict on liability, Rockbusters made no objection to retaining them to hear and decide the issue of damages. Moreover, Rockbusters did not object when the judge submitted the pertinent special questions to the jury.[4] When the jury returned with its verdict on damages, Rockbusters remained silent until a hearing as to the form of the judgment three days later.

By the position it took in its pleadings and at trial, Rockbusters essentially assented to having the fair and reasonable value of the cleanup work, in total and as necessitated by its activities, treated as a component of the damages which it caused Breslin and Constantine to sustain. It cannot now argue that the judge should have retained jurisdiction over this matter for purposes of payment or reimbursement of fifty and forty percent of the costs incurred. See *DeRose* v. *Putnam Mgmt. Co.*, 398 Mass. 205, 212 (1986), citing *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937).

Rockbusters also argues that the plaintiffs are not entitled to prejudgment interest, see G. L. c. 231, § 6B, on the cleanup work component of the damages. We do not agree. As can be seen from our discussion of the pleadings, the evidence, and the special questions, the "essence of this action is that it sounds in tort." *von Henneberg* v. *Generazio*, 403 Mass. 519, 525 (1988). The cost of the remedial measures necessitated by Rockbusters was awarded the plaintiffs as

---

[3]Those pleadings include Rockbusters' answer to the city, its cross claims against Breslin and Constantine, and its answer to their cross claims.

[4]Rockbusters lodged one objection to the judge's jury instructions on damages, but that objection is immaterial to the issues raised on its appeal.

consequential damages, and interest was properly included in the judgment. *Id.* at 525-526. See also *Schleissner v. Provincetown*, 27 Mass. App. Ct. 392, 396 (1989).

5. *A credit for the postremedy value of the land.* By special question, the jury was asked to determine the value of Breslin's land after "all work to comply with [the] city's demand to clear the debris, remove the structure and to make the property safe has been completed." They set that value at $75,000. Rockbusters now seeks a credit in that amount against its damages. It argues that it is not equitable to allow Breslin a windfall, i.e., damages for the total loss of his property which will have a value of $75,000 after the cleanup.

This argument overlooks the fact that the property has no value until Rockbusters and Breslin each expend $207,000 in payment of the total cleanup cost of $414,000. Based upon Rockbusters' own reasoning, it would not be entitled to any more than $37,500.

We do not think that Rockbusters is entitled to the benefit of any equitable consideration. By its tortious conduct, Rockbusters has imposed upon Breslin the burden of expending out of his own pocket a substantial sum of money, $207,000, that he otherwise would not have had to pay. We are mindful of the fact that there was evidence to show that the outcrop was not stable prior to its collapse and that eventually, perhaps within no more than ten years, Breslin would have had to have taken some action in respect to the outcrop on his land. However, there is nothing to show, and the jury was not asked to consider, what it would have cost Breslin to remove or stabilize the outcrop had Rockbusters not caused it to collapse upon his house and yard. We know only that, instead, Breslin must expend funds immediately and to the full extent deemed necessary by the city. In our view, the imposition of such a burden disqualifies a tortfeasor from the benefit of any claim based upon equitable considerations. We

see no error in the trial judge's refusal to make an adjustment to the damages awarded Breslin.[5]

*Judgment affirmed.*
*Orders denying motion for*
*postjudgment relief affirmed.*

ARMSTRONG, J. (dissenting in part). I agree with all aspects of the majority opinion except the calculation of damages, to which I would make a minor alteration. The jury, for reasons which are not before us for review, determined that Rockbusters was responsible for only one-half the $414,000 found by them to be the cost of the cleanup of the Breslin property ordered by the city. This element of damages was $207,000. To this the jury added the loss of value to the realty (which was found to be $211,475, based on the value before the rockfall less the value after the rockfall: i.e., $211,475 less $0); the loss of personal property, $25,000; and extra living expenses occasioned by the loss of use of the home, $28,800. The jury were also asked to find the value of the realty after the cleanup — presumably its value as an empty houselot — which they found to be $75,000. In context the jury's answer that the property was worth $0 after the rockfall must be interpreted as their way of stating that the property had no positive value because it was burdened by the cleanup orders, the cost of which would exceed the value of the raw land. As Rockbusters is being assessed its share of the cleanup costs as an independent element of damages, the net damage to the realty should be viewed as its value prior to the rockslide ($211,475) less its value after the cleanup ($75,000), or $136,475. With this amendment I would affirm the judgment.

---

[5]Because the special questions put to the jury required discrete answers to the various components of the total award of damages and because the judge did not allow the credit, any error in asking the special question concerning the value of the land after the cleanup is immaterial.