TRIANGLE CENTER, INC. *vs.* DEPARTMENT OF PUBLIC WORKS
& another.[1]

Suffolk.   December 11, 1981. — July 26, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Eminent Domain,* Taking in pais. *Water. Drain. Real Property,* Water,
Drain. *Commonwealth,* Drainage of water from highway, Liability
for nuisance. *Nuisance. Words,* "Encumbrances."

The installation of a drainage system in conjunction with the laying out of
a State highway by the Department of Public Works, and the resulting
discharge of surface water onto the plaintiff's land, did not constitute
a taking in pais where the required statutory authority for such a tak-
ing was lacking.  [861-862]
In applying the doctrine of private nuisance in assessing the reasonable-
ness of the State's draining surface water from a State highway onto
private land, this court held that if the additional drainage onto the
plaintiff's land attributable to the construction and maintenance of
the road causes identifiable and more than de minimis damage, an in-
junction against its continuation would be appropriate.  [862-865]
Neither the Commonwealth's common law right to drain surface water
from a highway onto neighboring land, nor the exercise of that right,
constituted an "encumbrance" on the neighboring land within the
meaning of G. L. c. 185, § 46, for purposes of determining whether
such right was extinguished by not having been noted on a land regis-
tration certificate.  [865-866]

CIVIL ACTION commenced in the Land Court Department
on March 20, 1980.

The case was heard by *Sullivan, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

---

[1] Commissioner of Public Works.

*Alicia R. Lopez (Robert V. Cauchon* with her) for the plaintiff.

*Howard R. Palmer,* Assistant Attorney General, for the defendants.

*Orrin P. Rosenberg, Verne W. Vance, Jr., & Barry Nagler,* for Massachusetts Conveyancers' Association & another, amici curiae, submitted a brief.

O'CONNOR, J. Triangle Center, Inc. (Triangle), appeals from the Land Court judgment denying its prayer to enjoin the Department of Public Works (DPW) from discharging water from a State highway onto Triangle's land. The DPW cross appeals, asserting that the Land Court erred in ruling that the DPW's claimed drainage easement was extinguished by G. L. c. 185, § 45. Because we conclude that the DPW never had a drainage easement, we do not consider whether such an easement was extinguished. We reverse the judgment and remand the case for further proceedings consistent with this opinion.

We take the following facts from the judge's findings. In 1936, the DPW took a section of highway named Plain Street on behalf of the town of Marshfield. The DPW installed a drainage system wholly within the highway bounds, consisting of a headwall and pipe, which seasonally discharges water onto Triangle's land. The owner in 1936, a commercial florist, did not object to the periodic flooding. No easement was recorded.

In 1941, the DPW laid out and took charge of the relevant section of roadway as a State highway. In 1945, the florist conveyed the property to James A. Logue and his wife. Shortly thereafter and continuing from time to time until 1970, Logue and business associates conferred with DPW representatives about solving the drainage problem. Local DPW representatives originally assured Logue that efforts would be made to rectify the situation. Since 1967, however, the district highway engineer has claimed that the DPW acquired "prescriptive rights" to discharge the water onto Triangle's land. In 1966, Logue conveyed title to the land to Triangle, of which he is now the sole stockholder.

At the insistence of a mortgagee, Triangle filed a petition to register its land in 1968. With the petition was a plan, prepared by a surveying company, which shows Plain Street as a "public" highway. Plain Street was not designated on the plan as a "State" highway, although such designation is required by Land Court Manual of Instructions § XI(3) (1959 & 1971 eds.). The plan does show Massachusetts highway bounds on the side of Plain Street opposite Triangle's land. The plan does not show the drainage system. No notice of the registration proceedings was given to the Commonwealth, and the Commonwealth did not participate in the Land Court proceedings.[2] The decree of registration was entered on August 5, 1970, showing two mortgages as the only encumbrances.

The question of drainage rights remained dormant from the time of the decree until February, 1980, when the DPW again claimed prescriptive rights. This complaint followed.

General Laws c. 185, created a system of land registration designed to provide certainty in real estate titles. Section 45 of G. L. c. 185, as appearing in St. 1981, c. 658, § 25, gives finality to registration decrees subject "to the right of any person deprived of land, or of any estate or interest therein, by a judgment of registration obtained by fraud to file a complaint for review within one year after the entry of the judgment, provided no innocent purchaser for value has acquired an interest." We have held in *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103 (1967), and in *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34 (1980), that one who loses land through a registration decree procured by fraud is entitled to an order requiring conveyance of the land to him though one year has passed since the entry of the decree, so long as no innocent purchaser for value has acquired an interest.

The DPW argues that Triangle obtained its decree by fraud within the ambit of these holdings, and that its drainage rights survive that decree. The trial judge concluded

---

[2] Notice was required by G. L. c. 185, §§ 38 and 39.

that there was insufficient evidence of fraud and that *State St. Bank & Trust Co., supra,* might not apply to easements. The judge's decision antedated *Kozdras, supra.* The judge held that "the Commonwealth does not have a drainage easement by prescription, grant or otherwise, affecting the registered land; the Commonwealth does, however, have the right to discharge water from Route No. 139 onto said land in order to preserve the safety of the highway; the exercise of this right was a taking in pais . . . and the Court has no authority to enjoin the D.P.W. from continuing to use the present drainage system or to require its relocation." Although the judge described the Commonwealth's exercise of its right to discharge highway surface waters onto the registered land as a "taking in pais," the right was earlier described in the judge's decision as a common law right in aid of keeping streets and ways safe.

There was no taking in pais. Although the DPW may have a common law right to discharge surface water onto Triangle's property, the exercise of this right would not constitute a taking in pais, and neither such a right nor its exercise would constitute an "encumbrance" on Triangle's land within the meaning of G. L. c. 185, § 46. Therefore, we need not consider the issues raised by the allegation of fraud.

1. *Taking in pais.* The DPW argues that by installing a drainage system in conjunction with laying out a State highway, and by discharging water onto Triangle's land, it effected a taking in pais.[3] A taking in pais is a taking with no formal act other than the physical appropriation of the property. It is possible only when authorized by statute. The act appropriating the land must purport to be performed under the statute and must show with reasonable definiteness what is taken. *Bryant* v. *Pittsfield,* 199 Mass. 530 (1908).

---

[3] The DPW does not argue on appeal that it acquired any rights by prescription as distinguished from acquisition by a taking in pais.

This case falls squarely within the holding of *Malinoski* v. *D.S. McGrath, Inc.*, 283 Mass. 1 (1933), in which we construed G. L. c. 84, § 10, as not authorizing takings in pais. Section 10 authorized takings "by eminent domain under chapter seventy-nine." We held that a taking could be accomplished only by compliance with the formal requirements of that chapter, including an order of taking (§ 1) and recording (§ 3). *Id.* at 8. Plain Street was taken pursuant to St. 1935, c. 464, § 2, which empowered the DPW to "enter upon or take by eminent domain under chapter seventy-nine of the General Laws . . . private lands . . . or rights therein." This statute, like the one in *Malinoski*, confers no authority for taking in pais. Neither does G. L. c. 83, § 4, provide the necessary authority. In force now and at the pertinent time, § 4 empowers the DPW to drain highways and to "take by eminent domain under chapter seventy-nine . . . such land or interest therein as may be necessary therefor." Section 4 does not authorize the DPW to discharge water onto abutting lands without effective a formal taking.

2. *Common law right of drainage.* The Land Court denied Triangle injunctive relief by relying on the rule expressed in *Holleran* v. *Boston*, 176 Mass. 75, 77 (1900), and *Turner* v. *Dartmouth*, 13 Allen 291, 293 (1866), that a town or city may freely drain surface water from public ways onto adjoining privately owned land, and that no action lies for damage to the land even where the water is gathered into artificial channels before passing from the way. The court implicitly recognized that towns and cities have no greater common law rights than the Commonwealth. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 386 (1889).

The concurring opinion in *Tucker* v. *Badoian*, 376 Mass. 907, 916-917 (1978) (Kaplan, J., concurring), provides guidance for resolving the issue before us. There, six members of this court announced their intention to apply the "reasonable use" doctrine to disputes between private landowners involving drainage of surface water onto neighboring private property. This would replace the "common

enemy" rule, which permitted landowners to divert surface water onto neighboring property without restriction, so long as artificial channels were not used. The old rule was characterized as both deplorably rigid and anarchic. *Id.* at 917 (Kaplan, J., concurring).

The government's right, expressed in *Holleran, supra,* and *Turner, supra,* to divert surface water from public ways onto neighboring property, is also rigid and anarchic.[4] That right too has bred irrational distinctions as the courts have attempted to limit its inflexibility. See, e.g., *Wishnewsky* v. *Saugus,* 325 Mass. 191 (1950) (diversion of highway surface water is actionable when the water is diverted into a natural waterway causing it to flood); *Ryder* v. *Lexington,* 303 Mass. 281 (1939) (same). We see no rational distinction between private property and public ways that justifies adherence to a form of the common enemy rule for one, but not the other.

The question whether the DPW's drainage of water onto Triangle's land is actionable is in substance no different from the question whether the DPW's use constitutes a private nuisance. See *Tucker, supra* at 917 (Kaplan, J., concurring). Several other States have explicitly applied the doctrine of private nuisance in assessing the reasonableness of draining surface water off public land. See *Reid* v. *Gwinnett County,* 242 Ga. 88, 89 (1978); *Klutey* v. *Commonwealth, Dep't of Highways,* 428 S.W.2d 766, 769 (Ky. 1968); *County of Clark* v. *Powers,* 196 Nev. 497 (1980). See also Restatement (Second) of Torts § 833 (1979). The Commonwealth may be held liable in tort for uses of its land that constitute a private nuisance. *Morash & Sons* v. *Commonwealth,* 363 Mass. 612 (1973) (DPW maintenance of road salt storage for nearly fifty years fouled adjoining

---

[4] Cases such as *Holleran* v. *Boston,* 176 Mass. 75 (1900), and *Turner* v. *Dartmouth,* 13 Allen 291 (1866), characterize the government's right to divert surface water as absolute. Whether this is the common law rule is unclear. Other cases from the same era apply nuisance analysis to municipal drainage cases. See *Daley* v. *Watertown,* 192 Mass. 116, 119 (1906); *Manning* v. *Lowell,* 130 Mass. 21 (1880).

landowner's water supply). "This liability attaches even where the nuisance arises out of the performance by the [Commonwealth] of a governmental duty." *Id.* at 616.

Public safety requires the drainage of surface waters from highways. However, it is unreasonable to impose on private individuals a disproportionate share of the cost of this public benefit. In nuisance actions against private defendants it is relevant, although not decisive, to compare the cost to the defendant of an injunctive remedy with the damage to the plaintiff. See *Kasper* v. *H.P. Hood & Sons,* 291 Mass. 24, 27-28 (1935); *Cumberland Corp.* v. *Metropoulos,* 241 Mass. 491, 502-503 (1922). In an action against a public defendant, however, such a comparison need not be made because the defendant, having the power to take a drainage easement by eminent domain, can limit its cost to the damage incurred by the adjoining landowner due to the encroachment. We think, therefore, in the absence of equitable considerations not apparent in the record before us, if the additional drainage onto Triangle's land attributable to the construction and maintenance of the road causes identifiable and more than de minimis damage, an injunction against its continuation would be appropriate, leaving the DPW to make other drainage arrangements or to take an easement. If, on the other hand, that drainage causes only de minimis damage to Triangle's land, an injunction would be inappropriate.[5]

Our decision is consistent with those of several other States. In *Klutey, supra,* at 767, 771, the court held that injunctive relief against drainage from a road was properly

---

[5] On appeal, Triangle seeks only injunctive relief against future drainage, not money damages for past drainage. At least in this circumstance, there is no injustice in applying this rule to drainage by the Commonwealth that has occurred for a long time. We have noted that through the eminent domain power, the Commonwealth can limit its cost to the damage to the adjoining landowner, and that it is unreasonable for the Commonwealth to impose on that landowner a disproportionate share of the cost of the public benefit. The longevity of the drainage does not make the Commonwealth's present drainage any more reasonable than it would be if it had just begun.

denied where, among other factors, the damage was caused solely by an increase in water velocity (rather than quantity) and the State had made good faith efforts to minimize the damage. The drainage was subsequently characterized as minimal. See *Commonwealth, Dep't of Highways* v. *Baird,* 444 S.W.2d 541, 543 (Ky. 1969). In *Beane* v. *Prince George's County,* 20 Md. App. 383 (1974), the court reversed the trial judge's grant of limited injunctive relief that would not have halted or minimized the damaging flow across the landowner's property. It ordered the judge to grant more complete relief to the landowner, without specifying which of several remedies, each costing the county more than the $10,000 damage to the plaintiff's land, should be implemented. The court held that the doctrine of comparative hardship was not applicable where interference with the plaintiff's land is material. *Id.* at 400. Other courts applying reasonable use analysis have held landowners suffering substantial damage from increased drainage to be entitled to relief against the public body without considering the cost of altering the drainage. See *Reid* v. *Gwinnett County, supra; Clark* v. *Powers, supra; Commonwealth, Dep't of Highways* v. *Baird, supra.*[6]

3. *Effect of registration on the Commonwealth's right to drain.* General Laws c. 185, § 46, provides that a registration decree renders title "free from all *encumbrances*" except those noted on the certificate and certain others not material here (emphasis added). We must determine whether either the Commonwealth's common law right to drain surface water onto neighboring land, or the exercise of that right, constitutes an "encumbrance" on that land within the meaning of § 46. If either does, the right is extinguished as a result of not having been noted on the registration certificate.

---

[6] Our decision today is restricted to drainage by the government. It should not be read to affect the reasonable use analysis applied to disputes between private landowners.

The statute does not define "encumbrance." Black's Law Dictionary 473 (5th ed. 1979) defines "encumbrance" as "[a]ny right to, or interest in, land which may subsist in another to diminution of its value, but consistent with the passing of the fee." This definition contemplates interests or rights that can be removed from the bundle of rights traditionally associated with ownership of the land. The right not to have the Commonwealth drain a de minimis quantity of water onto one's land is not included in this bundle. See generally Restatement of Property 11 (1936) (defining "complete property"). Therefore, the Commonwealth's right to drain does not constitute an "encumbrance" on Triangle's land.[7]

Excluding the Commonwealth's drainage right from the definition of "encumbrance" is consistent with the purposes of land registration. Registration is not meant to make land more valuable by extinguishing nontitleholders' rights in it; it is intended to make title more marketable by making title more certain. *Deacy* v. *Berberian,* 344 Mass. 321, 328 (1962). J. Hogg, Registration of Title to Land Throughout the Empire 100-101 (1920) ("the best guide in determining the limits of the conclusiveness of the register" is the "general principle . . . that registration of title is not intended to change the substantive law of property, or interfere with rights under that law except so far as is necessary for the carrying out of its professed objects — facility in dealing with land and security of title to land"). Extinguishing a right that exists against all parcels, the right to drain a de minimis quantity of water, would not make title more certain. Therefore, the registration process could not be concerned with this right, and the registration decree did not affect it.

---

[7] Citing *Leeds* v. *Wheeler,* 157 Mass. 67, 68 (1892), and *First African Methodist Episcopal Soc'y* v. *Brown,* 147 Mass. 296, 299-300 (1888), the amici curiae, Massachusetts Conveyancers' Association and Abstract Club, suggest that only recordable interests constitute encumbrances, and that therefore registration did not affect the Commonwealth's right to drain. We need not reach this argument.

We reverse the judgment and remand this case in order that the Land Court can apply the rule we announce today.

*So ordered.*