Louis R. DeSanctis *vs.* Lynn Water and Sewer
Commission.

Essex. March 7, 1996. - July 1, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

*Nuisance. Water. Drain. Real Property,* Water, Drain, Flowage of water,
Nuisance, Trespass. *Negligence,* Comparative.

Discussion of the reasonable use doctrine applicable to claims for damages
on a theory of private nuisance. [115-116]
Jurors' conclusion in a civil action that the defendant water and sewer
commission did not make an unreasonable use of its land was supported
by the evidence and the plaintiff could not prevail on his claim for dam-
ages on a private nuisance theory for the alleged flow of surface water
from the defendant's property onto his land. [116-118]
At the trial of a claim for negligent trespass arising from the alleged flow of
surface waters from the defendant's land and onto the plaintiff's land,
the jurors' answers to special questions, which were supported by the
evidence, were sufficient to bar the plaintiff's recovery under principles
of comparative negligence. [118-120]

Civil action commenced in the Superior Court Depart-
ment on March 30, 1990.

The case was tried before *J. Harold Flannery,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Charles E. Schaub, Jr. (Kim Goslant* with him) for the
plaintiff.

*Hugh W. Samson* for the defendant.

Abrams, J. The plaintiff, Louis R. DeSanctis, appeals from
the judgment of the Superior Court denying him recovery on
his claims that the defendant, the Lynn water and sewer com-
mission (LWSC), caused or permitted water to flow onto his
land over an extended period of time, causing his property to
become inundated with water, and altering the physical
characteristics of the land permanently. The plaintiff asserted
claims in trespass, nuisance, and takings, seeking both injunc-

tive and monetary relief against the city of Lynn, the town of Saugus, Kenneth W. Sanders, and the LWSC. The takings claim was directed out by the Superior Court judge, the question of injunctive relief reserved, and the remaining counts tried before a jury which returned a verdict in the form of answers to special questions. The jurors found in favor of Saugus and Sanders on every claim.[1] The jurors concluded that the LWSC had not intentionally or by unreasonable use caused water to flow onto the plaintiff's property but that it had negligently done so. The jurors determined that LWSC had 20% responsibility for the plaintiff's damage and that the plaintiff, through his filling work, caused or contributed to 80% of the damage. Invoking G. L. c. 231, § 85 (1994 ed.), the Commonwealth's comparative negligence statute, the trial judge barred the plaintiff from recovery. The plaintiff appeals only that portion of the ruling that denied him recovery of damages against LWSC and, therefore, we discuss only the facts relevant to that claim. We transferred the case to this court on our own motion.

The plaintiff is the fee owner of 14.7 acres of land located on the easterly side of Route 1 in Saugus. He leased this land in 1954 and purchased it in 1966. Approximately 6.3 acres of this land are protected wetlands and therefore unsuitable for development.[2] Two reservoirs, Walden Pond and Birch Pond, connect at a structure known as a wellhole immediately adjacent to the plaintiff's property on land managed by LWSC. This land also contains pipes and tunnels comprising part of the Lynn water supply system.

The parties are in sharp disagreement as to the age and cause of the wetland conditions on the plaintiff's property. The plaintiff said that when he purchased the property in 1966 it was not inundated with water and he was not aware it was considered a wetland. At trial, the plaintiff produced evidence that the dam at the wellhole weeped or caused small

---

[1]The city of Lynn was dismissed as a defendant prior to the case's going to the jury.

[2]At trial, the plaintiff's wetland specialist opined that over 50% of the plaintiff's land was wetland and that, even if all sources of water to the wetland were removed immediately, the area would remain a wetland for thirty to sixty years. The wetland currently is static. The specialist had no knowledge that would indicate that the size of the wetland had changed appreciably between his first observation in 1985 and later observations in 1991 and 1992.

trickles of water to escape and thereby steadily flow onto his land. Further evidence showed that on at least two occasions, in 1969 and 1971 (prior to the creation of LWSC by St. 1982, c. 381), the dam at the wellhole overflowed, flooding the plaintiff's property and neighboring Route 1. In 1985 the dam was again breached, resulting in water entering the plaintiff's property. The plaintiff contends that these problems with the wellhole and its pipe and tunnel structure caused the damage to his property.

The defendants defended on the theory that their actions with regard to the collection and dispersion of surface water benefited the plaintiff by retarding the flow of water onto his land rather than causing water to flow onto the land. The LWSC argued that without the wellhole, more water would naturally flow onto the plaintiff's property.[3] The defendants asserted that the land has always been a wetland. They produced evidence at trial that the plaintiff's land was at the bottom of a natural drainage basin, was depicted on maps, soil surveys, and photographs as a swamp or marshland since at least 1829, and that a soil test confirmed that the land had been a wetland for at least thirty years.[4] The defendants counterattacked with allegations that the plaintiff's illegal filling activity on the land blocked the natural flow of water and caused an increase in the amount and spread of the water on the plaintiff's property.[5] LWSC introduced evidence that additional fill and blasting ledge had been placed on the

---

[3]LWSC maintains that it first became aware of a problem with flooding on the plaintiff's land in 1985 when the dam at the wellhole was breached, that is, the well did not overflow, but that there was a crack or a hole in the well through which the water flowed. The LWSC reacted promptly to the plaintiff's complaint and immediately alleviated the problem. Later that year, the LWSC prepared an internal capital improvement program to rehabilitate and improve the water system in Lynn. A further survey, conducted by the United States Environmental Protection Agency and what is now the Massachusetts Department of Environmental Protection, recommended covering and securing the wellhole. The wellhole remains uncovered and unsecured due to resistance from the Saugus conservation commission which has expressed concern about the wellhole's historic significance and protection of the wetlands.

[4]The soil covering virtually all of the plaintiff's land is designated by soil conservation services as "muck," suggesting decades or centuries of soil saturation.

[5]In 1984, the plaintiff authorized a contractor to fill a portion of his land with debris from a construction site in East Boston. The plaintiff was

plaintiff's land prior to 1984 and again in 1989. Aerial photographs showed that the natural drainage channel was blocked by this filling activity.

The jurors concluded that LWSC was negligent and was 20% responsible for the damage and or adverse changes to the plaintiff's property and the plaintiff was 80% responsible for the changes and or damage. They determined that the damage was not repairable and reduced the value of the plaintiff's property by $143,000. Following the verdict, the plaintiff moved for entry of judgment in the amount of $715,000, plus interest and costs and renewed his motion for an injunction against further spillage of water. The plaintiff argued, based on an ex parte telephone call from a juror, that the jurors intended to award the plaintiff $143,000 as 20% of the total damages. He argued that the jurors' findings compel the legal conclusion that the LWSC has committed a nuisance and that, because nuisance liability is not subject to comparative negligence set-off, he should recover the full amount of his damages. The plaintiff's posttrial motion was denied and he appeals. We conclude that, because the jurors determined that LWSC did not use its land unreasonably, the plaintiff has not sustained his burden of proof under a private nuisance theory. We further conclude that G. L. c. 231, § 85, bars the plaintiff's recovery under a negligent trespass theory. We affirm the judgment.

A. *Interference with natural drainage of surface waters.* The plaintiff contends that he was irreparably harmed by the flow of surface water from the defendant's property onto his land.[6] He alleges that LWSC's negligent maintenance of the wellhole and its adjoining pipes and culverts created a private

---

ordered, under threat of criminal sanction, to desist and to remove the fill he had already placed on his property. He was told that the Saugus conservation commission determined that his land was a red maple swamp, an epitomal wetland marsh, and that, therefore, his actions violated G. L. c. 131, § 40 (1994 ed.), which makes it a crime to fill near a wetland without a valid order of conditions. The plaintiff contends that this was the first notice he had that his land was considered a protected wetland. The criminal complaint was dismissed when the plaintiff agreed to remove the fill he had caused to be placed on the land.

[6]Surface waters are waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake. Restatement (Second) of Torts § 846 (1979). This court did not distinguish

nuisance for which it is liable without regard to the plaintiff's comparative negligence. We conclude, on the basis of the jurors' answers to the special questions, that LWSC's actions did not create an actionable private nuisance and that LWSC was therefore not liable under a private nuisance theory.[7]

In Massachusetts, liability for a private nuisance caused by the flow of surface waters from a landowner's property to that of an adjoining landowner depends on whether the landowner is making a reasonable use of his land. See *Tucker* v. *Badoian*, 376 Mass. 907, 916-917 (1978) (Kaplan, J., concurring) (announcing intention to replace rigid and anarchic "common enemy" rule with reasonable use doctrine). See also *von Henneberg* v. *Generazio*, 403 Mass. 519, 522 (1988) (recognizing that since *Tucker, supra*, reasonable use doctrine is law of Massachusetts with regard to claims of private nuisance resulting from the flow of surface water); *Triangle Ctr., Inc.* v. *Department of Pub. Works*, 386 Mass. 858, 863 (1982) (applying reasonable use doctrine to public landowners).

Under the reasonable use doctrine, "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Armstrong* v. *Francis Corp.*, 20 N.J. 320, 327 (1956). Reasonableness is a question of fact for the jurors whose decision is based on consideration of all the relevant circumstances including the amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter. *Tucker, supra* at 917-918 n.2. The jurors also must consider whether the utility of the possessor's use of his land outweighs the gravity of the harm which results from his alteration of the flow of surface waters. *Armstrong, supra* at 330. See *Tucker, supra.*

Contrary to the plaintiff's contention, a determination by the jurors that LWSC negligently caused water to flow onto the plaintiff's land and adversely change or otherwise damage the plaintiff's land is not sufficient to support liability for a

---

between surface and ground water with regard to landowners' rights. *Tucker* v. *Badoian*, 376 Mass. 907, 912 (1978). *Kennison* v. *Beverly*, 146 Mass. 467, 469 (1888).

[7]As a consequence, we need not decide whether the principles of comparative negligence apply to claims of private nuisance.

private nuisance. The cases cited by the plaintiff do not support his contention that the negligent diversion of surface water is per se a private nuisance because each, unlike this case, involved a finding that the defendant landowner was making an unreasonable use of his land. See, e.g., *von Henneberg* v. *Generazio, supra*; *Triangle Ctr., Inc.* v. *Department of Pub. Works, supra*; *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. 392 (1989). A determination of unreasonable use is essential to the successful maintenance of a private nuisance claim for diversion of surface waters. Negligence, while relevant to the reasonableness of LWSC's use of its land, is not determinative of the existence of a private nuisance. See *Butler* v. *Bruno*, 115 R.I. 264, 273 (1975) ("The New Hampshire rule of reasonable use does not rest on negligence, nor does it focus solely on the character of the property owner's action. Instead, it focuses on the results of the action, the consequent interference with another's use and enjoyment of his land — much like the nuisance branch of tort law"). "Under the *Tucker* standard, the fact finder must view the landowner's activity on his land with an eye toward the effect of that activity on the flow of surface waters." *von Henneberg, supra* at 523. If a landowner fails to control the flow of surface waters but on a consideration of all relevant factors his actions are reasonable, an action for private nuisance will not lie. "Regardless of the category into which the defendant's actions fall [intentional and unreasonable or negligent, reckless, or abnormally dangerous], the reasonable use rule explicitly, as in the case of intentional acts, or implicitly, as in the case of negligent acts, requires a finding that the conduct of the defendant was unreasonable. This is the essential inquiry in any nuisance action." *Pendergrast* v. *Aiken*, 293 N.C. 201, 217 (1977).

Here the jurors, properly charged in line with *Tucker* v. *Badoian, supra,*[8] determined by their answer to a special question that the LWSC did not make an unreasonable use of its land. The jurors, when asked whether LWSC "intentionally or negligently, or by unreasonable use of its property, cause[d] water to flow onto the DeSanctis property," concluded that LWSC negligently caused water to flow onto the DeSanctis

---

[8]The plaintiff did not request that the jurors be charged that they could find a private nuisance based on LWSC's negligence alone and did not object to the jury charge given.

property but did not intentionally or by unreasonable use cause water to flow onto the property.[9] The jurors' conclusion that LWSC did not make an unreasonable use of its land is supported by the evidence and is binding on the plaintiff.[10] It is conclusive as to the plaintiff's claim of private nuisance. See *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. 392, 394 (1989) ("The determination whether the town has created a nuisance depends on whether it is making reasonable use of its property to control the collection and disposal of surface waters"). See also *von Henneberg* v. *Generazio*, 403 Mass. 519, 522 (1988).

B. *Negligence.* The jurors' failure to find unreasonable use while precluding recovery under a private nuisance theory does not preclude the plaintiff's recovery under an independent cause of action for negligent trespass. See *Tarzia* v. *Hingham*, 35 Mass. App. Ct. 506, 508-510 (1993) (distinguishing negligence and private nuisance). A plaintiff may recover under the theory of negligent trespass if the jurors determine that the defendant was negligent and that the defendant's negligent entry onto the plaintiff's land caused the plaintiff harm. See Restatement (Second) of Torts § 165 (1965); *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978) ("A cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between these two elements"). Absent comparative negligence on the part of the plaintiff, he would be entitled, given the jurors' findings of negligence and causation, to recovery under the theory of negligent trespass.

The jurors were not specifically asked whether the plaintiff was comparatively negligent.[11] Despite this failure, we agree with the trial judge that the jurors' answers to special ques-

---

[9]The jurors were instructed specifically that the categories of negligence, intentional conduct, and unreasonable use were not mutually exclusive and that they should make a separate determination as to each theory.

[10]Because the jury verdict was favorable to LWSC, we do not reach the argument that it was entitled to a directed verdict.

[11]LWSC, when informed at the eleventh hour that the judge sua sponte had decided to instruct the jury on negligence, should have objected or asked for an instruction on comparative negligence. However, given that negligence was not alleged in the complaint nor in the plaintiff's request for jury instructions, and causation and responsibility (issues relevant to comparative negligence) were hotly contested at trial, and the judge did instruct the jury that the defendants bore the burden of proof on their

tions were sufficient to bar the plaintiff's recovery under principles of comparative negligence. In answer to special questions, the jurors determined that the plaintiff's filling work caused or contributed to his damage and that the plaintiff was responsible for 80% of the total damage to his property. These conclusions were well supported by the evidence and could only have resulted if the jurors determined that the plaintiff's filling work on his land constituted negligence. LWSC offered overwhelming evidence that the plaintiff engaged in filling activity on his land, that this filling activity was in violation of a criminal statute designed to protect wetlands from alteration, and that such activity unintentionally blocked the natural drainage of surface water on the plaintiff's land and thereby caused substantial damage to the plaintiff's land. Once such evidence of the plaintiff's negligence in causing alteration to the wetlands on his property was introduced, the presumption that the plaintiff was acting with due care no longer had any effect. *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 265 (1986). The plaintiff's own testimony confirmed that he illegally filled the land, that he did not intend to block the drainage channel and create wetland conditions on his land, and that he did not consider the proximity to the wetlands when he engaged in the filling activity. We conclude that the jurors' answers to the special question that the plaintiff was responsible for 80% of his damage, in conjunction with the evidence that the plaintiff acted in violation of the criminal statute and that the plaintiff's actions either caused the creation or the exacerbation of the wetland conditions on his land, necessitates the conclusion as a matter of law that the jurors determined that the plaintiff was contributorily negligent in causing substantial damage to his own property.[12] See *Brown* v. *Boston & Me. R.R.*, 302 Mass. 90, 91-92 (1939) (motor vehicle operator

---

contention that the plaintiff's filling activity caused or contributed to the harm, we conclude that the special questions to the jury adequately conveyed the comparative negligence principles to the jury. See *Carvalho* v. *State Band Club, Inc.*, 3 Mass. App. Ct. 755 (1975) (defendant entitled to adequate charge on controlling issues; failure to request instructions immaterial).

[12]Contrary to the plaintiff's suggestion, we are not precluded from considering the violation of the criminal statute in assessing whether the plaintiff was negligent. General Laws c. 231, § 85, merely provides that "the violation of [a] statute, ordinance or regulation shall not as a matter of

guilty of contributory negligence as matter of law where all evidence indicates that he had ample opportunity to exercise proper caution and did not do so, acting in violation of statute); *Joyce* v. *New York, N.H. & H.R.R.*, 301 Mass. 361, 364-365 (1938).

Because the jurors concluded that the plaintiff bore more than 50% of the responsibility for his damage, G. L. c. 231, § 85, the comparative negligence statute bars the plaintiff from recovering any damages from LWSC under a negligence cause of action. See *Morgan* v. *Lalumiere, supra.* The trial judge, therefore, acted properly in denying the plaintiff recovery.

*Judgment affirmed.*

law *and for that reason alone,* serve to bar a plaintiff from recovery" (emphasis added). See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 28 (1979) (violation of safety statute or like enactment, while not conclusive on issue of liability, is evidence of a violator's negligence as to all consequences that the statute was intended to prevent). Our conclusion is in accord with the statute and caselaw as it is based on, in addition to violation of the criminal statute, the jurors' answers and the extensive testimony as to the negligently caused effect of the plaintiff's illegal activities on drainage on his land.