JAMES W. TRENZ & another[1] *vs.* TOWN OF NORWELL
& another.[2]

No. 06-P-254.

Plymouth. November 15, 2006. - February 20, 2007.

Present: GELINAS, DREBEN, & GRAINGER, JJ.

*Real Property,* Flowage of water, Nuisance, Easement. *Nuisance. Easement.*

In a civil action by property owners alleging damage from discharge of
significant amounts of water onto their land through certain culverts, the
judge's conclusion that there was no substantial and unreasonable interfer-
ence with the use of the plaintiffs' land did not permit this court to ascertain
whether he had applied the correct legal standard for determining the exist-
ence of a nuisance or whether he disbelieved the evidence of increased
water flowing onto the plaintiffs' property [275-278]; similarly, the judge's
failure to discuss more fully the evidence of increased harm to the
plaintiffs' land raised questions as to his conclusion that the defendant
town had a prescriptive easement to drain water through the culverts
[278-279], and the judge erred in failing to indicate the location of the
easement, if any, or to limit its size [279]; therefore, this court remanded
the matter for further subsidiary fact finding [279-281].

CIVIL ACTION commenced in the Superior Court Department on
April 13, 2000.

The case was heard by *Charles J. Hely,* J.

*Kathleen A. Reagan* for the plaintiffs.

*Robert W. Galvin* for town of Norwell.

*John C. Webster, III,* for Barbara B. Meacham.

DREBEN, J. This appeal concerns the flow of storm water
through four town culverts onto the property of the plaintiffs,
James and Christine Trenz. Claiming that significant amounts of
water discharge onto their land causing damage,[3] the plaintiffs

---

[1]Christine R. Trenz.

[2]Barbara B. Meacham.

[3]The damages according to the complaint included "loss of ability to perk

brought this action against the town and a neighbor, Barbara
Meacham. The latter, the plaintiffs allege, among other things,
installed a pipe that increases the flow of water into one of the
town's culverts, the so-called "Meacham culvert." After a jury-
waived trial, a judge in the Superior Court dismissed the
plaintiffs' action, ruling that neither defendant had committed a
trespass or had caused a nuisance. The judgment also declared
that the town has a prescriptive easement to drain storm water
through all four culverts onto the plaintiffs' land. Following the
judgment, the plaintiffs filed a motion to amend or alter the
judgment seeking, inter alia, a limitation of the easement to a
width of three feet and the right to alter the location of the
drainage easement over their property. The motion was denied.

The plaintiffs appeal from the rulings that neither defendant
is maintaining a nuisance and that the town has prescriptive
drainage easements, and from the denial of their postjudgment
motion. They do not challenge the judge's determination as to
trespass. Because the judge's subsidiary findings are inadequate
to support his conclusions and rulings and are insufficient to
disclose to us as a reviewing court the steps by which the judge
reached his ultimate determinations, we vacate the judgment
and remand for additional findings of fact and further proceed-
ings consistent with this opinion.

1. *Findings of the judge.* We focus on the judge's findings in
some detail. He divided his memorandum of decision and order
into three parts — an introduction, and separate discussions of
the town's culverts and the use by Barbara Meacham and her
late husband, Robert, of their property. In the introduction, the
judge found that the plaintiffs and Barbara Meacham are across-
the-street neighbors on Mount Blue Street. He set forth the
plaintiffs' claims that the town is trespassing on their property
by erecting and maintaining storm water culverts under Mount
Blue Street and causing storm water to flow onto their property,
and that Barbara Meacham has been trespassing by diverting
storm water from her property into the town culverts and across
onto the plaintiffs' property. Noting that the complaint does not
explicitly allege nuisance, the judge correctly considered that

and subdivide lot, encroachment of wetland boundary onto Trenz land[,] and
diminution of value of the Trenz land."

issue. He held that neither defendant "caused a nuisance or a substantial and unreasonable interference with the plaintiffs' use of their land." The most reliable testimony, he stated, came from the defendants' witnesses and to "the extent that evidence from the plaintiffs' witnesses conflicted with that from the defendants' witnesses, the court finds the latter to be more credible and reliable."

In the section discussing the town's culverts, the judge found that the Meacham culvert was built before 1946 and that all of the existing culverts under Mount Blue Street were built more than twenty years before the plaintiffs filed this action. He found that they were built to prevent storm water from damaging the street and were necessary to prevent serious safety hazards by preventing water and ice accumulations on the street.

The only finding as to harm to the plaintiffs was the statement, "In the more severe storms, some storm water flows from the culverts onto the plaintiffs' land." He then concluded:

> "The Town's use of the culverts in the vicinity of the plaintiffs' property has at all times been reasonable. See *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. 392, 394 (1989). There has been no trespass by the Town and no nuisance regarding the Trenz land. See *DeSanctis* v. *Lynn Water and Sewer Commission*, 423 Mass. 112, 116-118 (1996). The Town has not caused any substantial and unreasonable interference with the use of the Trenz property.
>
> "The Town's corporate use of these culverts and the resulting water runoff onto the plaintiffs' land have been open, notorious, continuous and adverse for more than twenty years. The Town has acquired an easement by prescription for the storm water drainage that runs from these culverts onto the plaintiffs' land. *Daley* v. *Swampscott*, 11 Mass. App. Ct. 822, 827-828 (1981); *Stone* v. *Perkins*, 59 Mass. App. Ct. 265, 266 (2003)."

The judge then turned to the use of the Meacham property. The following is a summary of his findings. The Meacham land is on the north and uphill side of Mount Blue Street, and the Trenz land is on the south and downhill side of that street, across from the Meacham property. An old, partially overgrown cart

path runs down the hill on the Meacham property toward the street and the Trenz land. Storm water flows downhill around the Meacham house and also along the cart path. Years ago, the Meachams placed under their driveway a drainage pipe which flows into the Meacham culvert.[4] "More recently, in the mid-1990's, the Meachams installed drainage pipes around their house," in part to reduce the water flowing to a neighbor on the north side of the street. Prior to 1992, at the request of James Trenz, Robert Meacham built berms next to the cart path to reduce the amount of storm water running into the Meacham culvert. The berms "helped" and were maintained by Robert Meacham until he became ill in 1992 and died in 1993. His son maintained them for about another year and since then they have not been maintained and "they are no longer as effective as they once were." The judge then concluded:

> "There has been nothing unreasonable about the Mea-chams' use of their property with respect to storm water drainage. The storm water naturally flows down the hill on the Meacham property and toward Mount Blue Street and the Trenz land. The natural downhill flow of storm water is made worse by the natural clay soil on both sides of the street. In severe storms, rainwater runs quickly over the ground with little absorption. The drainage pipes around the Meacham house and the pipe under their driveway are reasonable uses. These pipes do not cause an unreasonable intrusion of storm water onto the plaintiffs' land. The construction of the berms along the cart path was a neighborly good deed by Mr. Meacham. Reasonable use of their land by the Meachams does not require them to restore these berms or to alter their existing use of their land. There has been no trespass by the Meachams, and they have not created a nuisance. The Meachams have not caused any substantial and unreasonable interference with the use of the Trenz property."

The judge then entered an order dismissing the plaintiffs' claims and declared that the town "has an easement by prescrip-

---

[4]In addition, the record indicates that the Meacham culvert is one of four culverts under Mount Blue Street through which water flows onto the Trenz land. It is the one causing the most harm to that property.

tion for drainage of storm water from Mount Blue Street and from all existing Town culverts under Mount Blue Street onto the plaintiffs' land."

2. *Nuisance.* We first discuss the judge's decision as to nuisance without focusing on his decision that the town has a prescriptive easement to drain storm water through its culverts. The difficulty with the judge's findings is that we cannot determine from his ultimate finding — that there was no substantial and unreasonable interference with the use of the plaintiffs' land — whether he applied the correct legal standard for determining the existence of a nuisance or whether he disbelieved the extensive evidence, including photographs, of increased water flowing onto the plaintiffs' property in the 1990's.

"In Massachusetts, liability for a private nuisance caused by the flow of surface waters from a landowner's property to that of an adjoining landowner depends on whether the landowner is making a reasonable use of his land. See *Tucker* v. *Badoian*, 376 Mass. 907, 916-917 (1978) (Kaplan, J., concurring) (announcing intention to replace rigid and anarchic 'common enemy' rule with reasonable use doctrine)." *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. at 116.

That the culverts were necessary to prevent water and ice accumulation on the street was certainly supported by the evidence. "Public safety requires the drainage of surface waters from highways. However, it is unreasonable to impose on private individuals a disproportionate share of the cost of this public benefit." *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. 858, 864 (1982).

"Reasonableness is a question of fact for the [fact finder] whose decision is based on consideration of all the relevant circumstances including the amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter." *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. at 116. The fact finder must also balance the "utility of the possessor's use of [the] land" with "the harm which results from [the] alteration of the flow of surface waters." *Ibid.*

"Under the *Tucker* standard, the fact finder must view the

landowner's activity on his land with an eye toward the effect of that activity on the flow of surface waters." *von Henneberg* v. *Generazio*, 403 Mass. 519, 523 (1988). What is reasonable does not depend "solely on the character of the property owner's action. Instead, it focuses on the results of the action, the consequent interference with another's use and enjoyment of his land." *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. at 117, citing *Butler* v. *Bruno*, 115 R.I. 264, 273 (1975). "If the fact finder, after taking into account all of the relevant factors, finds that the possessor acted unreasonably, the nature of the original activity alone . . . will not bar liability." *von Henneberg* v. *Generazio*, 403 Mass. at 523. "A trier of fact may also find a landowner's conduct to be unreasonable if the harm to a neighbor is substantial and 'it would be practicable for the actor to avoid the harm in whole or part without undue hardship.' " *Rattigan* v. *Wile*, 445 Mass. 850, 857 (2006), quoting from Restatement (Second) of Torts § 830 (1979). See also Restatement (Second) of Torts § 828(c) comment h, at 133 (1979). Thus, neither the reasonableness of the town in draining surface waters from Mount Blue Street nor the Meachams' reasonableness in installing pipes to prevent harming another neighbor will, without consideration of the other relevant factors, determine whether either or both of them are causing a nuisance.

As indicated earlier, the only subsidiary finding as to harm to the plaintiffs was that in more severe storms, some storm water flows from the culverts onto the plaintiffs' land. The judge did not mention the uncontradicted evidence from several sources that the field owned by the plaintiffs was dry in the past and that the plaintiffs, who purchased the property in 1983, did not complain until the late 1990's. Nor did he refer to unchallenged evidence indicating that the velocity of the flow of water through the Meacham culvert to the plaintiffs' land resulted in significantly increased amounts of water flowing over the plaintiffs' land in the 1990's when the berms became ineffective and the Meacham house pipes were installed. While the judge noted that the berms became less effective, he appeared to focus only on the reasonableness of the Meachams' actions in putting in the pipes, and explicitly found, without explanation, that Barbara Meacham's reasonable use of her land does not require

her to replace the berms. Compare *Rattigan* v. *Wile*, 445 Mass. at 857.

Although most of the evidence as to damage came from the plaintiffs, it was corroborated by the former owner of the land, Hilma Forslund, who stated she walked on the field and it was dry in 1974 and 1975. Barbara Meacham also testified that in the past, the land was moist during the spring but dried out during the summer, and that the then owners used it as a hay field. Town officials and Barbara Meacham testified that the plaintiffs' complaints did not arise until after the events of the 1990's.[5] James Trenz testified that after Robert Meacham complied with his request to put berms in the cart path, the flow was corrected, and until the berms disappeared, the drainage was "de minimis." A letter to James Trenz dated November 30, 1999, from Arthur Tolman of the town's permanent drainage study committee, indicated that the drains installed by the Meachams in the mid-1990's caused problems.[6]

Since the evidence of increased damage during the mid-1990's was extensive and for the most part uncontradicted, the judge's failure to mention this evidence, other than in passing, is not remedied by his comment that he found the defendants' witnesses more credible and reliable than those of the plaintiffs.

Rule 52(a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974), requires the judge in a jury-waived trial to "find the facts specially and state separately [his] conclusions of law thereon." This he did not do. His ultimate conclusions do not give us "a clear understanding of [his] reasoning

[5]Paul Foulsham, a town official, answered interrogatories on behalf of the town. His testimony, however, was helpful to the plaintiffs. He testified that the first complaints from James Trenz came to his attention "in the vicinity of 1997." He also testified that "a lot of" the trench on the south side of Mount Blue Street which went toward the Trenz property "has been collapsed or not maintained."

[6]The letter states in part: "As you know, the Permanent Drainage Study Committee has spent a significant amount of time and effort in order to alleviate the drainage situation in front of your residence. Unfortunately, each time it seemed we had the solution, an obstacle would appear, the latest being, the concealed perimeter drain coming into the trench from the Meacham property."

The letter also characterizes the water coming out of "Meacham's hill" as "a considerable amount by any definition."

and the basis of his decision[,]" *Rapp* v. *Barry*, 398 Mass. 1004, 1005 (1986), and we cannot determine "whether [his] findings . . . are clearly erroneous." *Equal Employment Opportunity Commn.* v. *United Va. Bank*, 555 F.2d 403, 406 (4th Cir. 1977). In sum, we do not know whether the judge disbelieved the evidence of increased harm in the mid-1990's, or whether he looked only to the actions of the town and the Meachams in determining reasonableness and did not weigh sufficiently the other relevant factors, particularly the harm to the plaintiffs and the remedial actions which could be taken by the defendants.

3. *Prescriptive easement and its scope.* The judge's failure to discuss more fully the evidence of increased harm to the plaintiffs' land in the 1990's also raises questions as to his conclusion that the town has a prescriptive easement to drain storm water through the culverts under Mount Blue Street.[7] If the evidence shows that as a result of the events of the 1990's, the flow of water exceeded the flow for which the town had an easement by prescription, the easement must be limited to the uses that existed prior to those events. See *Shaughnessey* v. *Leary*, 162 Mass. 108, 111-112 (1894) (prescriptive easement to use a drain for sink does not include right to use drain for water closet). Although the use may change somewhat over time, "the variations in use cannot be substantial[,]" *Glenn* v. *Poole*, 12 Mass. App. Ct. 292, 293 (1981), quoting from *Lawless* v. *Trumbull*, 343 Mass. 561, 563 (1962), and "it is clear that ordinarily one who begins with a trickle of water at the beginning of the twenty years cannot acquire the right to flood his neighbor's land with a brook at the end of that time, even though the flow remains in the same location." *Fortier* v. *H.P. Hood & Sons*, 307 Mass. 292, 299 (1940).

---

[7]A municipality must "establish that its acts of disseisin constitute 'corporate action.' " *Daley* v. *Swampscott*, 11 Mass. App. Ct. 822, 827 (1981), quoting from *Cerel* v. *Framingham*, 342 Mass. 17, 21 (1961). For purposes of discussion, we assume that the judge correctly found there was corporate action by the town. On remand, the judge should make subsidiary findings on the issue including whether the town's authorization of the culverts constitutes authorization of water flowing onto the plaintiffs' land. In making such findings he should take into account the existence of the trench, which Paul Foulsham indicated had become broken down along the southern side of Mount Blue Street. See note 5, *supra*. When in good condition, the trench along the plaintiffs' property may have diverted water from that property.

Since the town relies on the easement as a defense to the claim of nuisance, the burden rests upon it to show that its rights are "extensive enough to authorize the amount and character of the use which [it has] made," and that it did not overburden the easement. *Swensen* v. *Marino*, 306 Mass. 582, 583 (1940). That the increase through the culverts may be due to the Meachams' actions does not relieve the town of liability if, as it would appear, the town did not preclude their tie-in to the culvert. See *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. 273, 288 (1994), and cases cited.

4. *Location of easement.* While the judge found that the town has a prescriptive easement over the plaintiffs' land, he did not, as required, indicate the location of the easement or limit its size. Cf. *Stone* v. *Perkins*, 59 Mass. App. Ct. 265, 267-268 (2003); *Boothroyd* v. *Bogartz, ante* 40, 45-46 (2007). Moreover, without considering *M.P.M. Builders, LLC* v. *Dwyer*, 442 Mass. 87, 90-91 (2004), in which the court adopted § 4.8(3) of Restatement (Third) of Property (Servitudes) (2000), the judge denied the plaintiffs' motion to limit the easement's width and failed to consider whether the plaintiffs were entitled to be heard as to its alteration. Section 4.8(3) provides:

> "Unless expressly denied by the terms of an easement . . . the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not (a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created."

In view of the foregoing cases, it was error to leave the easement, if any, held by the town totally undefined and unalterable.

5. *Remand.* Since we have concluded that the judge failed to make sufficient subsidiary findings for us to determine whether his ultimate findings were clearly erroneous or supportable by the evidence, and whether he correctly applied the law as to nuisance and easements by prescription, the matter is remanded to the Superior Court to make subsidiary findings as to:

(1) the increased damage, if any, to the plaintiffs' land with particular reference to the events occurring in the mid-1990's;

(2) the practicality of the town and Barbara Meacham taking remedial action to reduce the flow of water onto the plaintiffs' land under the principles of *Rattigan* v. *Wile*, 445 Mass. at 857, and Restatement (Second) of Torts §§ 826-830; and

(3) the effect on the easement, if any, (a) of the town's allowing the breakdown, if any, of the trench on the plaintiffs' side of Mount Blue Street; and (b) of the increase in water flow, if any, in the 1990's onto the plaintiffs' property; and whether such increase, if any, has caused overburdening of the easement held by the town.

The judge may also make such additional subsidiary findings as he deems appropriate to determine whether Barbara Meacham or the town is maintaining a nuisance. The judge is then to determine whether either defendant has caused a nuisance and whether the town has a prescriptive easement, and if so, whether it has been overburdened. If the judge determines that the town has a prescriptive easement and that it has not been overburdened, he shall then determine the location of such easement and, if the plaintiffs wish to alter its location, he shall consider, in the absence of agreement between the plaintiffs and the town as to its relocation, whether the proposed changes by the plaintiffs meet the criteria in § 4.8(3) of the Restatement (Third) of Property (Servitudes) and *M.P.M. Builders, LLC* v. *Dwyer*, 442 Mass. at 93. If the judge determines that the easement has been overburdened, he shall devise an appropriate remedy. See *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. at 864; *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. at 397; Restatement (Second) of Torts § 930(2) & comment c, at 549-550 (1979).

We recognize that we have placed a considerable burden on the trial judge who, the record shows, listened attentively and participated fully and carefully throughout the trial. However, the multiple issues in this difficult case require further findings for us to conduct a meaningful review. Our remand is not

intended to limit the judge's discretion, and he may hold such additional hearings, evidentiary or otherwise, as he deems appropriate.

6. *Conclusion.* The judgment is vacated and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*