Greco, PJ.
The plaintiff, Agostinho Oliveira (“Oliveira”), sued ICLB, Inc. (“ICLB”) and its president, Ian Forman (“Forman”), to recover $2,920.30, which he described in his complaint as unpaid wages due him under the contract between the parties pursuant to which Oliveira was hired to perform paving work. In addition to contending in four separate counts that this money was due “on an account,” for “work done,” in “[qjuantum [mjeruit,” and “for [ujnjust [ejnrichment,” Oliveira alleged that ILCB’s failure to pay the money amounted to both an unfair trade practice under G.L.C. 93A and a violation of the Massachusetts Wage Act, G.L.c. 149, §148. Under these statutes, Oliveira sought multiple damages and attorney’s fees. In the G.L.c. 93A count, Oliveira alleged that Forman approached his primary supplier of materials and, in effect, threatened to stop doing business with that company if it did business with Oliveira. In that count, Oliveira stated that both he and ICLB were “in the business or trade of installing concrete pavers,” and that “ICLB employed [him] as a subcontractor for the purpose of installing concrete pavers.”
ICLB filed a counterclaim in two counts. In the first count, ICLB also alleged that Oliveira was a subcontractor; that pursuant to its contract with Oliveira, he was obligated to maintain Workmen’s Compensation coverage; and that when he failed to do so, ICLB “incur [red] an additional expense of $4,034.26 for coverage on behalf of Oliveira.” In the second count, ICLB alleged Oliveira “breached [his] covenant of good faith and fair dealing.”
After a jury-waived trial, the judge found the following facts. ICLB would solicit homeowners for jobs to install paving and then hire subcontractors to do the actual work. Oliveira was so hired “pursuant to a standard Sub-contractor’s agreement” prepared by ICLB. Oliveira owned his own company, doing business as Karol Landscaping, which provided landscaping and snow plowing services. ICLB hired Oliveira as a subcontractor to install paving and paid him “on a job by job basis.” Oliveira determined how many workers he would hire for any job and what hours they would work. ICLB provided no training to these workers. Oliveira supplied “his *97 own equipment, materials and laborers,” and carried “his own Workmen’s Compensation liability and vehicle insurance.” Oliveira also agreed not to solicit other work from ICLB’s clients. If a homeowner approached Oliveira, or his workers, about additional work, they were required to notify ICLB, whose employees would then address the matter. On occasion, ICLB gave Oliveira’s workers T-shirts with ICLB’s name on them to wear while on a job site. Oliveira, on the other hand, used photographs of the work he performed for ICLB to advertise for other jobs. Pursuant to their agreement, for each job ICLB would withhold from the money due Oliveira a set amount to insure there were no problems with Oliveira’s workmanship. If there were none after one year, ICLB would pay the balance due to Oliveira. A Form 1099 was issued by the Internal Revenue Service to Oliveira, Karol Landscaping, or both, which stated the amounts paid by ICLB, to wit, $202,195.00 in 2004, $192,428.15 in 2005, $160,163.00 in 2006, and $2,033.50 in 2007. For a period in-2005, Oliveira failed to pay the required Workmen’s Compensation insurance, thereby causing ICLB to pay the amount due ($4,034.26). Having had to pay this amount, ICLB did not pay Oliveira the money it had retained as insurance for any problems in workmanship, i.e., the $2,930.30 Oliveira sought to recover in his complaint in this case, hi 2006, Oliveira stopped working for ICLB and competed with it for paving work, using the name Karol Hardscape, Inc. In 2007, ICLB warned Oliveira to stop using its advertising materials and images.
The trial judge found in favor of ICLB and Forman on both Oliveira’s complaint and their counterclaim, and awarded damages of $1,113.96. Since this figure exactly represents the $4,034.26 paid by ICLB for Workmen’s Compensation insurance, less the $2,920.30 which Oliveira claimed was improperly retained by ICLB, the judge essentially found for Oliveira on that claim, notwithstanding the wording of the judgment. The trial judge also awarded ICLB $5,000.00 in attorney’s fees pursuant to a provision in the “Sub-contractor’s agreement” allowing costs and fees. The judge also denied ICLB’s motion to dismiss Oliveira’s claim for unpaid wages, but allowed its motion to dismiss Oliveira’s G.L.c. 93A claim.
On this appeal, Oliveira contends that the trial judge erred in finding that he was an independent contractor as opposed to an employee. He argues that because he was an employee, ICLB violated G.L. c. 149, §148 by retaining any money due him for a year, thereby entitling him not only to the reimbursement that the trial judge awarded him, but also to costs and attorney’s fees. Oliveira also argues that ICLB was not entitled to be reimbursed for the Workmen’s Compensation payments.
Much turns in this case on the true status of Oliveira — employee or subcontractor. Resolution of that issue could affect whether he was entitled to be paid upon completion of his labor, despite the contract provision allowing ICLB to retain money due for up to a year; who is actually entitled to those retained amounts, Oliveira or his hired laborers; and whether ICLB was obligated to pay for Workmen’s Compensation, notwithstanding the agreement.
General Laws c. 149 sets out the statutory scheme obligating employers to pay the wages due their employees, as opposed to any subcontractors they may have, promptly and on a regular basis after their work is done. Up until July of 2004, an individual was deemed to be an employee, as opposed to a subcontractor or independent contractor, unless the following three requirements were all satisfied:
(1) that ‘such individual has been and will continue to be free from con *98 trol and direction in connection with the performance of such service under this contracf;
(2) that ‘such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all places of business of the enterprise’; and
(3) that ‘such individual is customarily engaged in an independently established occupation, profession or business of the same nature as that involved in the service performed.’
Molloy v. Massachusetts Mtge. Corp., 1998 Mass. App. Div. 4 n.4 (1998), quoting G.L.c. 149, §148B. Under this standard, the finding of the trial judge that Oliveira was an independent contractor was warranted. While it was a contested issue at trial, sufficient evidence was presented that he was “free from control and direction” by ICLB in the installation of the pavers at a job. As to part (2) of the above test, it is irrelevant whether Oliveira’s services were performed outside of the usual course of ICLB’s business. Oliviera’s services were done on site, that is, at the home of the person with whom ICLB contracted to do the paving. Thus, under the above test, the alternative requirement of part (2) was satisfied since Oliveira’s work was performed outside of all of ICLB’s places of business. Finally, as to part (3), Oliveira was conducting an “independently established” landscaping and plowing business to which he added the installation of pavers upon doing business with ICLB (although installation of pavers could well be considered a component of landscaping). Thus, all three prongs of the test that would have previously excluded Oliveira from employee status existed.
In July of 2004, however, there was a minor, yet significant, change in G.L.c. 149, §148B, whereby the Legislature made it easier for some individuals to be deemed employees and, thus, enjoy the rights attendant to that status. The amendment deleted the second alternative of part (2) of §148B whereby someone would be considered an employee unless his service “was performed outside of all places of business of the enterprise.” Without that alternative, it is critical whether Oliveira’s services were performed “outside the usual course” of ICLB’s business. If they were not, Oliveira could not be considered a subcontractor.
As the Supreme Judicial Court stated in Smith v. Winter Place, LLC, 447 Mass. 363 (2006), “[ijnsofar as the Attorney General’s office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions.” Id at 367-368. In 2008, the Attorney General issued Advisory 2008/1, which is directly related to the interpretation of §148B, as amended in 2004. In that advisory, the Attorney General noted that “[mjisclassified individuals are often left without unemployment insurance and workers’ compensation benefits” and “do not have access to employer-provided health care and may be paid reduced wages or cash as wage payments.” Advisory 2008/1, at 1. In addition, “entities that misclassify individuals deprive the Commonwealth of tax revenue that the state would otherwise receive from payroll taxes.” Id. The advisory further notes that in view of the 2004 amendment, “the service [an] individual performs must be ‘outside the usual course of business of the employer,’ in order for the individual not to be classified as an employee.” Id. at 3. Among the factors that the Attorney General’s office will consider in enforcing the *99 law regarding this provision are “whether the business of the contracting entity is no different than the services performed by the alleged independent contractor.” Id at 5.
The examples included in Advisory 2008/1 of how the Attorney General would apply the second prong of §148B as amended are helpful in determining whether Oliveira was a subcontractor as found by the trial judge, or an employee of ICLB. For instance, if a “drywall company classifies an individual who is installing drywall as an independent contractor,” or if “a company in the business of providing motor vehicle appraisals classifies an individual appraiser as an independent contractor,” there “would be a violation of prong two” in both instances because the installer and the appraiser are “performing an essential part” of the company’s business. Id. at 6. On the other hand, prong two would not be applicable to an accounting firm that “hires an individual to move office furniture ... because the moving of furniture is incidental and not necessary to the accounting firm’s business.” Id Compare Athol Daily News v. Board of Rev. of the Div. of Employment & Training, 439 Mass. 171 (2003), in which the Supreme Judicial Court concluded that adult carriers who delivered newspapers for the plaintiff performed their services in the usual course of the plaintiff’s business because plaintiff “defined its business as ‘publishing and distributing’ a daily newspaper”; Id. at 179, and Carpetland U.S.A., Inc. v. Illinois Dep’t Of Employment Sec., 201 I11.2d 351, 386 (2002), cited in Advisory 2008/1 at 6 n.4, where the Illinois court noted in dictum that “when one is in the business of selling a product, sales calls made by sales representatives are in the usual course of business because sales calls are necessary,” and that when “one is in the business of dispatching limousines, the services of chauffeurs are provided in the usual course of business because the act of driving is necessary to the business.” See also Amero v. Townsend Oil Co., Essex Superior Court, No. 07-1080-C (Dec. 3,2008), in which Amero contracted with Townsend to deliver fuel, and the trial judge concluded that “Amero’s status as an employee [was] more easily established’ under the 2004 amendment to Section 148B in that “the bulk of Townsend’s business [was] fuel oil delivery, and that was the service Amero provided.”
The examples in Advisory 2008/1, along with the cases cited above, clearly raise the question whether Oliveira was properly found to be a subcontractor. While he may also have been a landscaper, Oliveira was installing pavers for an entity in the business of installing pavers. Those services, on the record before us, do not appear merely incidental to ICLB’s business. The trial judge focused primarily on the degree to which ICLB controlled Oliveira’s performance of those services. However, all three factors in §148B had to be applied to determine whether Oliveira was something other than an employee. The result reached by the trial judge appears to have been based on a straightforward contract analysis; the amount Oliveira owed because he breached his obligation to pay Workmen’s Compensation insurance exceeded the money retained by ICLB under their contract by $1,113.96.
In the circumstances of this case, however, the statute trumps the contract. Thus, this matter must be returned to the trial court for further proceedings. If, after the application of the test set out in §148B, Oliveira is found to be an employee, among the issues to be resolved by the trial judge will be whether Oliveira is entitled to any *100 damages pursuant to G.L.c. 149, §150[2]; whether Oliveira, himself, is entitled to any damages as opposed to the people who worked for him; and whether ICLB is precluded from recovering any amounts it paid for Workmen’s Compensation insurance on the ground that, as the employer, it was obligated to pay such amounts notwithstanding the contract. However, “[o]ur remand is not intended to limit the judge’s discretion, and [s]he may hold such additional hearings, evidentiary or otherwise, as [s]he deems appropriate.” Trenz v. Town of Norwell, 68 Mass. App. Ct. 271, 280-281 (2007).
The judgment is vacated, and the case is returned to the trial court for further proceedings consistent with this opinion.
So ordered.

 Section 150 of G.L.c. 149 provides that an aggrieved employee who prevails “shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys’ fees." Notwithstanding the use of the word “shall,” the award of treble damages appears to be “in a judge’s discretion.” Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 710 (2005). See also Killeen v. Westban Hotel Venture, LP., 69 Mass. App. Ct. 784, 787-788 (2007).